**GREAT AMERICAN INSURANCE COM-PANY et al., Appellants,**

v.

**SHARPSTOWN STATE BANK, Appellee.**

No. 11558.

Court of Civil Appeals of Texas.

Austin.

Dec. 20, 1967.

Rehearing Denied Jan. 10, 1968.

Barrow, Bland & Rehmet, David Bland, Underwood & Holcombe, Decatur J. Holcombe, Louis C. Abernathy, Houston, for appellants.

Wilson, Kendall, Koch & Randle, Will Wilson, Gaynor Kendall, Austin, for appellee.

HUGHES, Justice.

This suit is for a declaratory judgment under Art. 2524–1, Vernon's Ann.Tex.Civ. St., brought by Sharpstown State Bank, ap-

pellee, against Commercial Investment Fund, Inc., the Great American Insurance Company, William Nathan and Mayfair Building Corporation.

Nathan and Mayfair filed pleas of privilege to be sued in Harris County. Great American filed a plea of privilege to be sued in Dallas County, or, in the alternative, in Harris County. Commercial Investment has made no appearance.

This appeal is from an order overruling all pleas of privilege.

There are no fact issues in this case, only questions of law being presented.

Sharpstown is a Texas banking corporation located in Harris County. Nathan is a resident of Harris County. Mayfair is a Texas corporation with its principal place of business in Harris County.

Great American is a New York corporation with a permit to do business in Texas and it does do business here. It has an office in Dallas County and its agent for service resides there. It also has several agents and a salaried representative residing in Travis County, the county of suit.

We summarize the pertinent allegations of appellee's petition which are supported by stipulation or uncontradicted evidence:

(1) On or about December 7, 1966, Mayfair Building Corporation and Nathan executed and delivered to Sharpstown a promissory note payable to it, or order, in the principal sum of $300,000 due December 7, 1967, and payment of which was secured by pledge of certain stock and by the surety bond next below mentioned.

(2) On or about December 7, 1966, the Great American Insurance Company, as surety, along with Nathan and Mayfair Building Corporation as principals, made, executed and delivered to Sharpstown, as obligee, a surety bond in the penal sum of $300,000, conditioned that the principals would pay the aforesaid $300,000 note, and promising on the part of surety that "should the principals fail to perform their obliga-

tion to Obligee" as set forth in the note, the surety would "make such payment promptly to the Obligee after receipt of written demand therefor."

(3) On or about December 7, 1966, Nathan and Commercial Investment Fund, Inc., made, executed and delivered to Sharpstown a promissory note payable to it, or order, in the principal sum of $170,000 on December 7, 1967, and payment of which was secured by pledge of certain stock and by the surety bond next below mentioned.

(4) On or about December 7, 1966, the Great American Insurance Company, as surety, together with Nathan and Commercial Investment Fund, Inc. as principals, made, executed and delivered to Sharpstown, as obligee, a surety bond in the penal sum of $170,000, conditioned that the principals would pay the aforesaid $170,000 note, and promising on the part of the surety that "should the principals fail to perform their obligation to Obligee" as set forth in the note, the surety would "make such payment promptly to the Obligee after receipt of written demand therefor."

In reliance on the respective surety bonds and the undertakings of the parties as set out therein, Sharpstown advanced and lent to the principals in the respective bonds, the amount of their respective notes.

On or about March 6, 1967, the Great American Insurance Company notified Sharpstown in writing that it held the surety bonds to be invalid, that it asserted that the bonds were not authorized bonds by it, and that it disclaimed all liability or recognition of the bonds or any obligation that they purported to cover.

Averring that the repudiation of the contracts was wrongful, and that it had suffered monetary loss and damage by reason thereof, Sharpstown prayed judgment decreeing and declaring each of the promissory notes to be valid, binding obligations of the parties who signed the same as makers, and decreeing and declaring each of the surety bonds to be valid obligations

of and binding, according to their face and tenor, upon the respective parties alleged to have executed them.

Great American has two points the first of which is that the pleadings and evidence do not, as a matter of law, establish an existing controversy essential to vest the court with jurisdiction to grant declaratory relief.

Nathan and Mayfair have a similar point to the effect that the trial court lacked jurisdiction because appellee sought only an advisory opinion.

█ We agree, of course, that our courts do not have authority to render advisory opinions. We disagree with the view that appellee seeks only an advisory opinion.

The declaratory judgment act, supra, provides, in part:

"Section 1. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

Power to construe, etc.

Sec. 2. Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a Statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, Statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Before breach

Sec. 3. A contract may be construed either before or after there has been a breach thereof. * * *

Enumeration not exclusive

Sec. 5. The enumeration in Sections 2, 3, and 4 does not limit or restrict the exercise of the general powers conferred in Section 1, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty."

All appellants base their points on the premise that this action is premature for the reason that there has been no default on the notes secured by the obligation of Great American and that no liability of Great American on the bonds executed by it can come into existence until the principals on the notes default. Particularly, this is true, they say, because under the provisions of the notes Sharpstown has no right to accelerate payment of the notes.

This analysis of the situation is, in our opinion, completely unrealistic and provides a solution for the problem similar to the manner in which an ostrich is said to solve its problems.

A pauper's note guaranteed by the United States Government has an entirely different character from an unguaranteed note of the pauper.

Sharpstown has the right to know whether it holds notes guaranteed by Great American or whether it holds the unguaranteed notes of their makers.

The validity of such guarantees having been repudiated by the guarantors, it is of the utmost importance and urgency that this question be determined. Should Sharpstown[1] desire to negotiate these notes, common honesty would require it to advise the purchaser that Great American had repudiated its obligation to guarantee payment of

---

1. Other financial institutions are shown to have beneficial interest in these notes.

the notes. That this knowledge would impair merchantability of the notes is unquestionable.

■ We hold that a present justiciable controversy of great magnitude is shown to exist between Sharpstown and Great American even though consequential relief may not at this time be granted. See Garwood Irr. Co. v. Lundquist, 252 S.W.2d 759, Tex. Civ.App., Galveston, writ ref.

■ The written obligation of Great American is a contract within the provisions of the declaratory judgment act and since its validity is challenged proceedings under such act to resolve this doubt are within the express terms of the statute.

We overrule the points under discussion.

Appellee's right to maintain this suit in Travis County against Great American is based upon Sub. 27 of Art. 1995, V.T.C.S., which provides, in part, that a foreign corporation may be sued in any county " * * * where such company may have an agency or representative * * *."

■ All appellants have points to the effect that this subdivision of Art. 1995 is in violation of the 14th Amendment to the United States Constitution because it, considered in connection with Sub. 23 of Art. 1995, discriminates between foreign and domestic corporations.

These points are overruled upon the authority of Commercial Insurance Company, etc. v. Adams, 369 S.W.2d 927, Tex.Sup.Ct., approving a decision by the 1st Court of Civil Appeals in Houston, 366 S.W.2d 801, holding subdivision 27 of Art. 1995 not violative of the 14th Amendment to the United States Constitution.

Appellants Nathan and Mayfair have two remaining points, one that the doctrine of forum non conveniens should have been held applicable to this case and the pleas of privilege sustained and the other that they are not necessary parties to this suit.

■ In support of its argument that Travis County is not the forum in which this case could be tried most conveniently, these appellants point out that appellee and they are residents of Harris County and that the notes involved are payable there whereas none of the parties reside in Travis County and none of the involved transactions occurred there.

The reason Sharpstown sought a "neutral" jurisdiction is not apparent, and, we believe, of no legal concern. It had a right, under the venue statutes, to bring the suit where it did. Since this was a right conferred upon it by statute, the doctrine of forum non conveniens, as such, is not applicable. H. Rouw Co. v. Railway Express Agency, 154 S.W.2d 143, Tex.Civ.App., El Paso, writ ref.

■ The pleas of privilege of Mayfair and Nathan were purely formal. Neither by such pleas nor by any other pleading did either of these parties raise the issue of forum non conveniens, nor did they move for change of venue under Rules 257–259, inc., Texas Rules of Civil Procedure. It follows that they cannot, for the first time, raise such issues in this Court. This point is overruled.

■ We also overrule these appellants' remaining points and hold that they are necessary parties to this suit under Sub. 29a, Art. 1995, V.T.C.S.

Mayfair and Nathan executed a bond as principals, with Great American as surety, binding themselves, jointly and severally, to pay Sharpstown the amount of a note, $300,000.00, made by Mayfair and Nathan to Sharpstown conditioned only that if the principals paid such note, the obligation of the bond would become void.

A similar bond was executed by Nathan and Commercial Investment Fund as principals and Great American as surety in regard to the $170,000.00 note executed by Nathan and Commercial to Sharpstown.

The declaratory judgment sought is to have these bonds established as valid according to their terms and provisions. A provision in each bond was that the principals and surety were jointly and severally liable thereon.

Sharpstown cannot obtain full relief in this case unless it obtains a judgment that the principals as well as the surety are jointly and severally liable on the bonds in suit. No judgment of joint liability could be rendered in the absence of any party sought to be held jointly liable. Commonwealth Bank and Trust Co. v. Heid Bros., 122 Tex. 56, 52 S.W.2d 74; Ladner v. Reliance Corporation, 156 Tex. 158, 293 S.W.2d 758.

The judgment of the trial court is affirmed.

Affirmed.