In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00086-CV
______________________________


RICHARD ALLEN KLEVEN, II, Appellant
 
V.
 
TEXAS DEPARTMENT OF CRIMINAL JUSTICE, 
INSTITUTIONAL DIVISION, ET AL., Appellees


                                              

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 98C1607-005


                                                 



Before Morriss, C.J., Ross and Hadden,* JJ.
Memorandum Opinion by Chief Justice Morriss

_________________________________
*Roby Hadden, Justice, Sitting by Assignment


MEMORANDUM OPINION

            Richard Allen Kleven, II, sued the Texas Department of Criminal Justice, Institutional
Division, and others for misappropriation of his personal property. He sought damages in the
amount of $164.45. The trial court dismissed Kleven's suit for want of subject-matter jurisdiction
because the amount Kleven sought in damages was less than $200.00. We affirm.
            As this Court explained in Arteaga v. Jackson,
Historically, a district court's minimum amount in controversy was $500.00, as set
out by Article 1906 of the Texas Revised Civil Statutes. This statutory provision was
omitted when Article 1906 was codified into the Government Code, because it
duplicated the constitution's jurisdictional grant. Tex. Gov't Code Ann. § 24.007
revisor's note (Vernon 1988). The district court's constitutional
minimum-amount-in-controversy jurisdiction was deleted as a part of the 1985
amendment of Tex. Const. art. V, § 8. As a result of this deletion, the district
court's minimum-amount-in-controversy jurisdiction was reduced from $500.00 to
$200.01. Tex. Const. art. V, § 19 provides: "Justice of the peace courts shall have
. . . exclusive jurisdiction in civil matters where the amount in controversy is two
hundred dollars or less . . . ."
 
Arteaga states in his petition that he was damaged in the amount of $200.00. This
is not within the jurisdictional ambit of a state district court. When a plaintiff
specifically pleads an amount below the jurisdiction of the district court, he has
effectively pleaded himself out of court. See Peek v. Equipment Serv. Co. of San
Antonio, 779 S.W.2d 802, 804 (Tex. 1989).

994 S.W.2d 342, 342–43 (Tex. App.—Texarkana 1999, pet. denied) (footnotes omitted).

            In the case now before us, Kleven sought damages of less than $200.00. This amount does
not satisfy the minimum requirement to invoke the subject-matter jurisdiction of a district court. See
Tex. Const. art. V, § 19. The trial court properly found it lacked subject-matter jurisdiction over
Kleven's primary cause of action.
            Kleven's lawsuit, however, also sought declaratory relief. A request for declaratory relief
alone is insufficient to establish jurisdiction in a trial court. Chenault v. Phillips, 914 S.W.2d 140,
141 (Tex. 1996). The Texas Uniform Declaratory Judgments Act is merely "a procedural device for
deciding cases already within a court's jurisdiction." State v. Morales, 869 S.W.2d 941, 947 (Tex.
1994). 
            In this case, the trial court's jurisdiction over Kleven's declaratory judgment claims was
limited by its jurisdiction over Kleven's primary claim for damages under the misappropriation cause
of action. When the trial court lacked subject-matter jurisdiction over the primary claim, it could
not exercise jurisdiction to consider Kleven's secondary issues. Cf. Chenault, 914 S.W.2d at 141–42
(Texas Supreme Court lacked original jurisdiction to consider challenge to attorney occupation tax);
Power v. Chapman, 994 S.W.2d 331 (Tex. App.—Texarkana 1999, no pet.) (county court at law
properly dismissed remaining claims that exceeded court's $100,000.00 jurisdictional limit); and
Kadish v. Pennington Assoc., L.P., 948 S.W.2d 301, 304 (Tex. App.—Houston [1st Dist.] 1995, no
writ) (trial court had jurisdiction over declaratory judgment claim because plaintiff brought
additional claim that satisfied the amount in controversy requirement necessary to invoke the district
court's jurisdiction). Accordingly, the trial court properly dismissed Kleven's suit for want of
jurisdiction.
            Because the jurisdictional issue is dispositive of Kleven's appeal, we need not consider his
remaining points of error. We affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 22, 2004
Date Decided:             March 23, 2004



blood now appeals.


 We reverse the judgment.
Standard of Review
          To prevail on a motion for summary judgment, the moving party must establish that
no genuine issue of material fact exists and that it is entitled to judgment as a matter of
law. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). When reviewing the
trial court's grant of a summary judgment, the appellate court must examine the evidence
in the light most favorable to the nonmovant, disregarding all contrary evidence and
inferences. Nixon v. Mr. Prop. Mgmt., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985). A trial
court errs by granting a defendant's traditional motion for summary judgment if the
defendant fails to demonstrate that at least one element of the plaintiff's case has been
conclusively negated or fails to demonstrate that the defendant is entitled to judgment as
a matter of law. Amouri v. Southwest Toyota, Inc., 20 S.W.3d 165, 168 (Tex.
App.—Texarkana 2000, pet. denied). "In deciding if the defendant has met its burden, we
indulge every reasonable inference from the evidence and resolve all doubts in favor of the
nonmovant." Id. (citing Montgomery v. Kennedy, 669 S.W.2d 309, 311 (Tex. 1984)); see
also Nixon, 690 S.W.2d at 548-49.
           U.S. Silica moved for summary judgment based on Youngblood's alleged failure
to file suit within the applicable statute of limitations. "A defendant who moves for
summary judgment based upon limitations bears the burden of negating the discovery rule
at the summary judgment stage." Nugent v. Pilgrim's Pride Corp., 30 S.W.3d 562, 567
(Tex. App.—Texarkana 2000, pet. denied). The discovery rule is an exception to the
statute of limitations. As this Court recently stated, the discovery rule
defers the accrual of a cause of action until the plaintiff knew, or through the
exercise of reasonable diligence should have known, of the facts giving rise
to the cause of action. Trinity River Auth. v. URS Consultants, Inc., 889
S.W.2d 259, 262 (Tex. 1994); Moreno, 787 S.W.2d at 351. The discovery
rule therefore delays the commencement of the limitations period when the
nature of the injury is inherently undiscoverable and evidence of the injury is
objectively verifiable. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 918
S.W.2d 453, 456 (Tex. 1996); Tanglewood Terrace, Ltd. v. City of
Texarkana, 996 S.W.2d 330, 337 (Tex. App.—Texarkana 1999, no pet.). 
These two elements of inherent undiscoverability and objective verifiability
balance these conflicting policies in statutes of limitations: the benefits of
precluding stale claims versus the risks of precluding meritorious claims that
happen to fall outside an arbitrarily set period. S.V. v. R.V., 933 S.W.2d 1,
6 (Tex. 1996). An injury is inherently undiscoverable if it is the type of injury
that is not generally discoverable by the exercise of reasonable diligence. 
See HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998), citing
Altai, 918 S.W.2d at 455. In order for an injury to be inherently
undiscoverable, the injury need not be absolutely impossible to discover. 
S.V., 933 S.W.2d at 7. The discovery of a particular injury depends on the
circumstances of the injury and the plaintiff's diligence.
 
Haas v. George, 71 S.W.3d 904, 912 (Tex. App.—Texarkana 2002, no pet.). Regarding
the discovery rule and the tolling of the statute of limitations in occupational disease cases,
the Texas Supreme Court has also stated, 
a cause of action accrues whenever a plaintiff's symptoms manifest
themselves to a degree or for a duration that would put a reasonable person
on notice that he or she suffers from some injury and he or she knows, or in
the exercise of reasonable diligence should have known, that the injury is
likely work-related.
 
Childs v. Haussecker, 974 S.W.2d 31, 33 (Tex. 1998) (emphasis added).

Background Facts
          The evidence, viewed in the light most favorable to Youngblood, showed the
following: Youngblood worked at Kilgore Ceramics from 1959 until his retirement in 1999. 
There was testimony from several sources that Youngblood worked around silica and that
(for at least some portion of his employment) he worked in an area in which he was also
exposed to asbestos. Youngblood testified he retired because he was no longer able to
work due to breathing problems and a continuous cough that was eventually accompanied
by excessive phlegm production. According to Youngblood, it was not until December
1997 that he learned he had silicosis. 
          During his deposition, Youngblood acknowledged that Kilgore Ceramics required
employees to have their chests x-rayed on being hired, and thereafter all employees were
x-rayed every two or three years. The record before us shows Youngblood was x-rayed
on a periodic basis consistent with this policy. Youngblood also admitted he began
experiencing respiratory problems in the late 1980s, though he did not assume his
condition was work related. 
          In a letter dated March 17, 1992, Allan Goldstein, M.D., the medical director of the
organization that performed a chest x-ray test for Youngblood at his place of employment,
informed Youngblood his x-ray results were such "that we recommend you consult your
physician for further evaluations." The letter, however, did not suggest a medical
diagnosis. As a result of Goldstein's letter, Youngblood went to see Gail Stockman, M.D.,
in Longview. At the time of his deposition in this case, Youngblood could not recall what
Stockman told him regarding his tests at her office. Youngblood, however, denied being
told by Stockman in 1992 that he had silicosis. 
          In 1997, doctors again thought Youngblood's employer-sponsored x-ray appeared
abnormal. The company physician suggested Youngblood see his personal physician for
further evaluation. That letter, like the one Youngblood received in 1992, did not suggest
he had silicosis. According to Youngblood, he was not told he had silicosis and asbestosis
until he later saw Peter Petroff, M.D., of Independent Medical Associates, a company hired
at that time by his employer to review its workers' x-ray results. 
          On August 28, 1998, Youngblood sued a number of defendants, including U.S.
Silica, claiming each was liable for contributing to his contracting the disease conglomerate
silicosis, a disease he claims resulted from his use of the defendants' products during his
employment at Kilgore Ceramics. The trial court ultimately granted summary judgment in
favor of U.S. Silica. On appeal, Youngblood contends genuine issues of material fact exist
as to whether he knew, or should have known, more than two years before the date he
filed the lawsuit that his injuries were work related. 
U.S. Silica's Contentions
          "Except as provided by Sections 16.010 and 16.0045, a person must bring suit for
. . . personal injury . . . not later than two years after the day the cause of action accrues." 
Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002). U.S. Silica alleged
Youngblood either received his silicosis diagnosis in 1985 or 1992 or, alternatively, he
should have known before 1996 that his respiratory problems were work related and that,
by waiting until 1998 to file suit, Youngblood's cause of action was barred by the two-year
statute of limitations. 
          In defense of the trial court's award of summary judgment, U.S. Silica contends a
reasonable person with Youngblood's specific health problems (continuous coughing and
shortness of breath), and in his line of work (being continuously exposed to silica), would
have been on notice that he or she suffers from some injury and, using due diligence,
would have either known, or should have reasonably concluded, that those symptoms were
caused by work-related exposure to silica. Then, citing Zacharie v. U.S. Natural Res., Inc.,
94 S.W.3d 748, 753 (Tex. App.—San Antonio 2002, no pet.), U.S. Silica contends a
singular, definitive, medical diagnosis is not required for the worker to be placed on notice
of a work-related injury; "[a] differential diagnosis is sufficient." U.S. Silica then argues (1)
Youngblood does not dispute he knew he had a lung disease before August 28, 1996; and
(2) Youngblood should have concluded his lung disease was work related before August
28, 1996, because (a) Youngblood's employer had a policy of having employees receive
chest x-rays on a regular basis, the clear purpose of which was to screen workers for
occupational lung diseases, (b) Stockman's unobjected-to affidavit establishes she made
a differential diagnosis of either silicosis or tuberculosis in 1992, (c) Randy Erwin, M.D.,
recommended entering a differential diagnosis of old tuberculosis or other granulomatous
disease, including fungal disease, sarcoidosis, or silicosis on May 16, 1995, (d) Dale
Fisher, M.D., had recommended entry of a differential diagnosis of silicosis, old
tuberculosis, fungal disease, or sarcoidosis in 1998, and (e) Youngblood reportedly
admitted to Andy Abril, M.D., in February 2001 that he had been diagnosed with silicosis
about six or seven years earlier. 
          U.S. Silica also contends the affidavits submitted by Johnny and Carol Youngblood
in response to its motion for summary judgment (and tendered before the summary
judgment hearing) were substantively defective and therefore could not serve as evidence
that may be considered in whether the trial court properly granted summary judgment. 
U.S. Silica further asserts that the Youngbloods' amended affidavits, though filed with leave
of the trial court, were submitted well after the entry of summary judgment and therefore
had no evidentiary effect. 
Youngblood's Contentions
          Youngblood counters by referencing his summary judgment affidavit in which he
stated (1) he neither knew, nor could have known, he had silicosis before December 1997
when he was notified by Petroff he had silicosis, and (2) he was never informed of Erwin's
1995 recommendation of a differential diagnosis that included silicosis, nor did he ever say
to Abril that he had silicosis. Then, comparing his appeal with the case reviewed by the
Texas Supreme Court in Childs, 974 S.W.2d 31, Youngblood contends the doctors'
continual failure to diagnose his illness, when combined with Youngblood's own testimony
denying knowledge of the work related injuries before 1997, presents more than a scintilla
of evidence of a material fact, thereby precluding summary judgment. 
          Youngblood also asserts that the affidavits he submitted in response to U.S. Silica's
motion for summary judgment may be considered in reviewing the trial court's decision. 
Youngblood contends U.S. Silica failed to obtain a ruling on its objections to the affidavits
before or during the trial court's summary judgment hearing. Therefore, according to
Youngblood, U.S. Silica waived its objections to those affidavits, thereby permitting our
consideration of those affidavits as substantive evidence that precludes summary
judgment. 
Analysis
          The relevant material fact at issue on appeal is whether Youngblood actually knew,
or should have known before 1996, that his injuries were work related. If the answer to
either question is "yes," then the trial court properly granted summary judgment. Only if
the answer to both questions is "no" should we find the trial court abused its discretion.
A. The Youngbloods' Affidavits
          After U.S. Silica filed its motion for summary judgment, Youngblood filed a lengthy
response. His response included affidavits from himself and his wife, Carol. On July 30,
2002, at 9:38 a.m., U.S. Silica filed nine pages of objections to the Youngbloods'
affidavits.


 At 11:05 a.m. that same day, the trial court granted U.S. Silica's motion for
summary judgment. The trial court did not rule on U.S. Silica's objections to the
Youngbloods' affidavits until August 7, 2002, when the trial court signed an order sustaining
U.S. Silica's objections on the basis that the affidavits did not affirmatively state that the
facts contained therein were true and within the personal knowledge of each affiant. The
trial court, however, attempted to vacate this order October 15, 2002. Also on October 15,
the trial court granted Youngblood's motion for leave to file amended affidavits. These
amended affidavits of Johnny and Carol Youngblood are identical to the original affidavits,
except that the amended affidavits were notarized July 30 and contain the additional
paragraph, "The facts stated in this affidavit are true and correct and within my personnel
[sic] knowledge." 
          Affidavits submitted to a trial court in opposition to a motion for summary judgment
must be made on personal knowledge. Tex. R. Civ. P. 166a(f). In its brief to this Court,
U.S. Silica cites Landscape Design & Constr., Inc. v. Warren, 566 S.W.2d 66, 67 (Tex. Civ.
App.—Dallas 1978, no writ), for the proposition that an affidavit's failure to affirmatively
state it is based on personal knowledge amounts to a defect of substance and, therefore,
the Youngbloods' affidavits are legally insufficient to defeat U.S. Silica's motion for
summary judgment. 
          In Warren, an attorney submitted an affidavit that was based on information he had
garnered from the client rather than his own first-hand knowledge. Id. The court of
appeals reversed the trial court's award of summary judgment because the attorney's
affidavit did not recite facts from which his personal knowledge could be inferred. Id. 
Thus, Warren does not stand for the general proposition that all affidavits that fail to state
affirmatively they are based on personal knowledge are thereby inherently and
substantively rendered insufficient. Instead, Warren reflects a two-step analysis: First,
does the affidavit affirmatively state it is based on personal knowledge by someone
competent to testify to the matters contained therein? If so, then the affidavit may be
considered as evidence. If not, then the trial court should secondly review the entire
affidavit and determine whether the affiant is testifying from personal knowledge and is
competent to give such testimony. If the answer to this latter question is "yes," then the
affidavit has a defect of form, and the trial court should provide the offending party an
opportunity to cure the defect. Id.; see Tex. R. Civ. P. 166a(f). If the answer to the second
question is "no," as it was in Warren, or if the party refuses to correct the defect of form,
only then should the trial court disregard the affidavit's contents to determine whether the
remaining evidence supports or defeats summary judgment.


 Tex. R. Civ. P. 166a(f)."Defects in the form of affidavits or attachments will not be grounds for reversal unless
specifically pointed out by objection by an opposing party with opportunity, but refusal, to
amend." Id. 
          In this case, the Youngblood affidavits submitted before the summary judgment
hearing lack the phrase, "The facts in this affidavit are true and correct and within my
personnel [sic] knowledge." The Texas Supreme Court has held that, if it is clear from
reading an entire affidavit that an affiant is testifying from personal knowledge and is
competent to testify regarding the matters so stated, the affidavit's failure to invoke the
"personal knowledge" language is a mere defect of form. Grand Prairie Indep. Sch. Dist.
v. Vaughan, 792 S.W.2d 944, 945 (Tex. 1990); see also Grotjohn Precise Connexiones
Int'l v. JEM Fin., Inc., 12 S.W.3d 859, 866 (Tex. App.—Texarkana 2000, no pet.). If a party
fails to object to a defect in the form of an affidavit, or fails to secure an adverse ruling on
such an objection, then any objection to the affidavit for a defect in form is waived. 
Vaughan, 792 S.W.2d at 945 (citing former Tex. R. Civ. P. 166a(e) (Vernon 1990), now
Tex. R. Civ. P. 166a(f)); Grotjohn Precise Connexiones Int'l, 12 S.W.3d at 866. The ruling
on an objection to an affidavit's form must be obtained at or before the trial court hears the
summary judgment motion. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337,
343 n.7 (Tex. 1993).
          We have reviewed the entirety of the Youngblood affidavits submitted before the
summary judgment hearing. Johnny's affidavit discusses his initial visit with Stockman, the
process of undergoing a bronchoscopy, and his conversations with Stockman, among
other things. His affidavit is clearly based on personal knowledge. Cf. Vaughan, 792
S.W.2d at 945. Similarly, Carol's affidavit leads us to conclude that it, too, is based on her
personal knowledge of the matters therein stated. We find the Youngbloods' failure to
affirmatively state their affidavits were based on personal knowledge amounts to a defect
of form, not of substance. As U.S. Silica did not, until well after the summary judgment
hearing, obtain rulings on its objections to the form of the Youngbloods' affidavits, those
objections have been waived. 
          U.S. Silica, however, further argues the Youngbloods' affidavits are merely a sham
and, therefore, incompetent evidence. 
If a party's own affidavit contradicts earlier testimony, the affidavit must
explain the reason for the change. Farroux v. Denny's Rests., Inc., 962
S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Without an
explanation, it is assumed that the sole purpose of the affidavit was to avoid
summary judgment, and as such, the affidavit merely presents a "sham" fact
issue. Id. 

Burkett v. Welborn, 42 S.W.3d 282, 286 (Tex. App.—Texarkana 2001, no pet.). "[A]n
attempt to create a 'sham' fact issue . . . will not defeat a motion for summary judgment. 
Cantu v. Peacher, 53 S.W.3d 5, 7 (Tex. App.—San Antonio 2001, pet. denied).
          U.S. Silica correctly points out that, during his deposition, Youngblood testified he
could not remember his prior conversations with Stockman.
          Q And what do you recall Dr. Stockman telling you?
 
          A I can't remember . . . .
 
In his affidavit submitted in response to U.S. Silica's motion for summary judgment,
however, Youngblood testified,
[In 1992,] Dr. Stockman could not provide me with an explanation as to what
caused the abnormal chest x-ray and that annual treatment and a
subsequent bronchoscopy by another physician was recommended. At no
time, [punctuation sic] did Dr. Stockman inform me that I had an occupational
lung disease or silicosis. In fact, Dr. Stockman told me I could return to work
. . . and carry out my duties as a tank-caster.
 
U.S. Silica contends Youngblood's sudden and unexplained ability to remember his 1992
conversation with Stockman (as recorded in Youngblood's summary judgment affidavit)
directly conflicts with his deposition testimony. U.S. Silica then asserts "[b]ecause this
aspect of Mr. Youngblood's affidavit contradicts his prior deposition, without any
reasonable explanation, it fails to constitute probative summary judgment evidence, as a
matter of law." 
          Looking at both statements in a vacuum, it would be easy for us to agree with U.S.
Silica's position. We cannot, however, examine mere fragments of a deposition. We are
required to examine the deposition testimony in the context of the entire deposition to
determine if, in context, the deposition and the affidavit are not apposite so as to raise a
fact issue that would preclude summary judgment. See Nixon, 690 S.W.2d at 548-49
(requiring (2) all evidence favorable to the nonmovant to be taken as true regarding a
disputed fact issue precluding summary judgment, and (3) every reasonable inference
indulged in favor of nonmovant).
          We believe Youngblood's affidavit is congruous with his deposition testimony. On
the page following his above-cited testimony, the following exchange occurred:
          Q Other than this occasion in 1992 when Dr. Goldstein told you [sic]
needed to have your X rays evaluated or to consult with your physician for
further evaluation, do you recall any other times when you were told that your
X ray was abnormal?
 
          A In '97 when they said that it was silicosis and asbestos.
 
          Q Is that the first time that anyone told you you had silicosis --
 
          A Yes, sir.
 
          Q -- or asbestos?
 
          A Yes, sir. They just told me before that it was abnormal.
 
          In light of the entirety of Youngblood's deposition testimony, we must conclude his
summary judgment affidavit is harmonious with his deposition testimony. The thrust of
both is the same: no one told him he had silicosis or asbestosis until 1997. Therefore, we
disagree with U.S. Silica's contention that Youngblood's summary judgment affidavit is
merely a sham that cannot be considered as substantive evidence.
          Yet even if we were to conclude there were subtle differences between
Youngblood's deposition and his affidavit, we could not say those differences were so
egregious that the affidavit should be disregarded. See Shaw v. Maddox Metal Works,
Inc., 73 S.W.3d 472, 478 (Tex. App.—Dallas 2002, no pet.). Instead, any such
inconsistencies or conflicts are such that they would create a fact issue that should be
resolved by a jury. Larson v. Family Violence & Sexual Assault Prevention Ctr., 64 S.W.3d
506, 513 (Tex. App.—Corpus Christi 2001, pet. denied) (finding trial court abused
discretion if it excluded affidavit based on any alleged conflicts between affidavit and
appellant's deposition).
          Accordingly, we will consider the Youngbloods' affidavits in our review of the
evidence to determine whether the trial court erred by granting summary judgment in favor
of U.S. Silica. Cf., Peerenboom v. HSP Foods, Inc., 910 S.W.2d 156, 160-61 (Tex.
App.—Waco 1995, no pet.).
B. Granting Summary Judgment
          "Typically, inquiries involving the discovery rule raise questions to be decided by the
trier of fact, although the trial court may determine the commencement of limitations as a
matter of law if reasonable minds could not differ about the conclusion to be drawn from
the facts set forth in the record." Nugent, 30 S.W.3d at 567. In this case, the medical
reports included differential diagnoses of silicosis and tuberculosis (or various other
diseases) as early as 1992. The 1992–1996 medical records, however, do not affirmatively
indicate Youngblood was ever made aware of these differential diagnoses. For example,
Youngblood reported shortness of breath beginning in the late 1980s and early 1990s, with
subsequent onset of prolonged coughing in the 1990s. One doctor told Youngblood his
condition was probably the result of smoking cigarettes. Youngblood received news of
abnormal x-rays in 1992 from Goldstein (a company physician) and from Stockman
(Youngblood's personal physician). According to Youngblood, however, Stockman found
no evidence of silicotic material, silicosis, or tuberculosis. It was not until he met with
Petroff December 5, 1997, that anyone told Youngblood he had silicosis. 
          From 1992 until 1997, the doctors hired by Kilgore Ceramics made repeated
suggestions, in writing, that Youngblood visit his personal physician regarding the abnormal
x-rays. The medical records admitted into evidence show Youngblood usually visited a
doctor within two or three months of receiving those letters. We believe Youngblood's
pattern of visiting his personal physician soon after receiving letters from company
physicians shows Youngblood was exercising due diligence in trying to find the cause of
his abnormal x-rays. Yet despite these timely doctor visits, Youngblood consistently stated
no one could explain the cause of the breathing difficulties. According to Youngblood, no
doctor formally diagnosed him with silicosis until December 1997. There was no evidence
that a 1995 unsigned recommendation from Erwin to Surya Lanka, M.D., was either
conveyed to Youngblood or acted on by Lanka. Thus, assuming Youngblood's testimony
is believable (as we must in reviewing a grant of summary judgment, in which all evidence
is viewed in the light most favorable to the nonmovant), this is not a case where the plaintiff
failed to exercise due diligence or otherwise had sufficient information that he should have
concluded his shortness of breath was related to inhalation of silica.



          The chief contradictory evidence comes from Stockman's 2002 affidavit (made ten
years after she met with Youngblood) and anecdotal evidence suggesting Youngblood
could have concluded his respiratory difficulties were related to breathing silica for more
than forty years during his employment at Kilgore Ceramics (especially when the plant
ordered periodic chest x-rays and made employees wear protective masks). But viewing
the evidence in the light most favorable to Youngblood, there is more than a scintilla of
evidence suggesting Youngblood neither discovered his disease, nor could he have
assumed he had a work-related illness,


 until so informed December 5, 1997. We
therefore find the trial court erred by granting summary judgment in this case.
          This holding is consistent with the Texas Supreme Court's expressed policy of not
requiring plaintiffs to file suit "based only upon their suspicions about causal connections." 
Childs, 974 S.W.2d at 43. And our decision is consistent with the Texas Supreme Court's
proclamation that the commencement of the statute of limitations cannot be determined
as a matter of law if reasonable minds could differ about the conclusion to be drawn from
the facts in the record. Id. at 44–46. 
Conclusion
          For the reasons stated, we find, when viewing the evidence in the light most
favorable to Youngblood, there is more than a scintilla of evidence Youngblood used due
diligence in determining the cause of his respiratory difficulties, but despite such efforts
neither knew nor could have known his illness was work related until December 5, 1997. 
          We reverse the trial court's judgment and remand the case for further proceedings.
 
                                                                           Donald R. Ross
                                                                           Justice


Date Submitted:      November 12, 2003
Date Decided:         March 17, 2004