Abdolhossein AMOURI, Appellant,

v.

SOUTHWEST TOYOTA, INC., d/b/a Sterling McCall Toyota, Appellee.

No. 06–99–00099–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 7, 2000

Decided April 18, 2000.

George J. Prappas, Houston, for appellant.

John D. Walker, Michael P. Cash, Cash & Jones, LLP, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Abdolhossein Amouri appeals from an adverse summary judgment rendered in his suit against Southwest Toyota, Inc. d/b/a Sterling McCall Toyota (Southwest). Amouri contends (1) the evidence raised a fact issue as to his claim that Southwest fraudulently induced him to sign a lease contract, and (2) the trial court improperly considered a defective transcript of Amouri's deposition in granting summary judgment. We reverse the judgment and remand the case for trial.

On September 4, 1997, Amouri visited Southwest, a Toyota dealership, intending to purchase a vehicle. A Southwest salesman, Apolo Lucci, assisted Amouri. Amouri selected a vehicle from the lot, test drove it, and decided he would buy it. Amouri contends that he and Lucci discussed only his *purchasing* the vehicle and the payment terms, and that they never discussed leasing the vehicle. To purchase the vehicle, Amouri proposed that he trade in his own car and make a substantial down payment and first installment payment. Nevertheless, after some discussion between Lucci and Southwest's managers, Lucci gave Amouri a document titled "Closed End Motor Vehicle Lease Agreement" and asked him to sign it. The document was in fact a lease agreement rather than a purchase agreement. Amouri signed the document believing he was purchasing the vehicle. Amouri traded in his car and made a substantial down payment and first installment payment, and then drove home in the vehicle he believed he had purchased. Several days later, a friend of Amouri's, a former car salesman, inspected the paperwork Southwest had given Amouri and suggested that Amouri confirm that he had actually purchased the

vehicle, rather than having leased it. Amouri telephoned Lucci, who reassured him that he had purchased the vehicle. The following day, Amouri returned to Southwest, where he met with several managers, each of whom told him that he had leased the vehicle. Amouri explained that if he were not purchasing the vehicle, he wanted the contract voided. He requested the return of his money and trade-in vehicle and offered to pay for his temporary use of the new vehicle. The managers refused his requests and stated there was nothing they could do. Amouri also requested a complete copy of the lease contract, but was told that Southwest did not keep contracts and that he would receive a copy in two weeks. Within several days, Amouri returned the vehicle and keys to Southwest.

In October 1997, Amouri filed suit against Southwest for breach of contract, common law fraud, breach of the duty of good faith and fair dealing, and violations of the Deceptive Trade Practices Act–Consumer Protection Act, seeking the recovery of his initial down payment, installment payment, car rental expenses, and monetary damages for the damage done to his trade-in vehicle. In March 1999, Southwest filed a motion for summary judgment on the grounds that, as a matter of law, Amouri could not establish breach of contract or fraud. The trial court granted summary judgment, which Amouri now appeals only on the ground that summary judgment was improper because there is a genuine fact issue as to his claim that Southwest fraudulently induced him to sign the lease contract. In his first amended petition, Amouri alleged that Lucci and other Southwest employees induced him to sign the lease contract by fraudulently representing that they were assisting him in the purchase of the vehicle and by deliberately remaining silent when they directed him to sign the lease contract. Pursuant to Tex.R.App. P. 45, Southwest requests that this Court sanction Amouri for filing a frivolous appeal.

The motion for summary judgment contains language indicative of both a traditional and a no evidence summary judgment motion. In the motion, Southwest contended that, as a matter of law, Amouri cannot establish fraud because the law charges parties with knowledge of the contents of contracts they sign, and that rule forecloses proof of any representation contrary to the terms of the contract, as well as any reliance on a representation. It also contended that Amouri's case presented "no evidence" of a false representation or reliance, elements of a fraud cause of action. Southwest also asserted that the rule of law previously stated made it impossible for there to be any evidence of these. We therefore construe that portion of the motion to be a traditional summary judgment motion.[1] In addition, Southwest contended that in order for Amouri to successfully assert a fraud claim, he must have presented evidence that Southwest prevented him from reading the lease, or physically forced him to sign it. It suggested that Amouri presented no evidence of these, arguing that his own deposition testimony belies any such charges. Texas Rule of Civil Procedure 166(a)(i) requires a motion to be specific in alleging a lack of evidence on an essential element of the plaintiff's alleged cause of action. *See* Tex.R. Civ. P. 166(a)(i); *In re Mohawk Rubber Co.*, 982 S.W.2d 494, 497 (Tex. App.-Texarkana 1998, orig. proceeding). With this contention, Southwest did not specifically challenge any essential element of Amouri's fraud cause of action. For that reason, the motion is insufficient as a no evidence motion, and we will review it under the traditional summary judgment standard. *See Weaver v. Highlands Ins. Co.*, 4 S.W.3d 826 (Tex.App.-Houston [1st Dist.] 1999, no pet. h.).

The standard of review for traditional summary judgments is well-established. A defendant who moves for summary judgment must demonstrate that no material issue of fact exists as to at least one essential element of the plaintiff's cause of action, and that the defendant is entitled to judgment as a matter of law. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 166–67 (Tex.1987). The defendant may do this by producing summary judgment evidence showing that at least one element of the plaintiff's cause of action has been conclusively negated, or by pleading and conclusively proving each essential element of an affirmative defense. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996). In deciding if the defendant has met its burden, we indulge every reasonable inference from the evidence and resolve all doubts in favor of the nonmovant. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984).

■ Fraudulent inducement is a type of fraud claim that shares the same elements as a simple fraud claim. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990); *Carr v. Christie*, 970 S.W.2d 620, 624 (Tex.App.-Austin 1998, pet. denied). Thus, to prove fraudulent inducement, Amouri had to show (1) that Southwest made a material misrepresentation that was false, (2) that it was either known to be false when made or was asserted without knowledge of its truth, and (3) that it was intended to be acted on, was relied

---

1. In *Grant v. Southwestern Elec. Power. Co.*, 20 S.W.3d 764 (Tex.App.-Texarkana 2000, no pet. h.), this Court noted that the rules do not prohibit "hybrid" motions, motions which contain both a traditional and a no evidence summary judgment motion. But, in *Grant*, the movant based his motion on two independent, alternative theories. One theory was not subsumed by the other, as here. The parties themselves recognize that portion of the motion to be a traditional summary judgment motion. In its brief, Southwest does not argue that Amouri failed to present evidence of misrepresentation and reliance. Amouri's response to Southwest's motion, stating "Defendant filed a Motion for Summary Judgment on the grounds that the Plaintiff could not prevail as a matter of law on his claim of Breach of Contract and Common Law Fraud ..." indicates that Amouri also believed Southwest asserted a traditional summary judgment motion.

on, and caused injury. *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d at 688–89. In its motion, Southwest attacked the elements of misrepresentation and reliance. Citing two cases, *Brown v. Aztec Rig Equip., Inc.,* 921 S.W.2d 835 (Tex.App.-Houston [14th Dist.] 1996, writ denied), and *Plains Cotton Coop. Ass'n v. Wolf,* 553 S.W.2d 800 (Tex. Civ.App.-Amarillo 1977, writ ref'd n.r.e.), it contended that it was entitled to summary judgment as a matter of law because the law charges all competent persons with knowledge of the contents of the contracts they sign. According to Southwest, this rule necessarily forecloses any false representations contrary to the terms of the contract or any reliance thereon. It contends that the failure to read a contract constitutes negligence on the part of the signor, for which the signor is not excused, and that even illiteracy will not relieve a party of the consequences of his contract. At oral argument, counsel for Southwest cited *Fisher Controls Int'l, Inc. v. Gibbons,* 911 S.W.2d 135 (Tex.App.-Houston [1st Dist.] 1995, writ denied), as support for its contention that, because of this rule of law, fraudulent inducement cannot be established by misrepresentations that contradict the terms of a contract. Rather, it contends that fraudulent inducement is proven sometimes by evidence of a misrepresentation, but most often by evidence of a *concealment* of a material fact that is not thereafter contradicted by the written terms of a subsequent contract. In other words, Southwest argues that the concealment used to induce the agreement must involve something not provided for by the contract.[2]

■ The general rule is that every person who has the capacity to enter into a contract is held to know what words were used in the contract, to know their meaning, and to understand their legal effect. *Indemnity Ins. Co. of North Am. v. W.L. Macatee & Sons,* 129 Tex. 166, 101 S.W.2d 553, 556 (1937); *accord: Vera v. North Star Dodge Sales, Inc.,* 989 S.W.2d 13, 17 (Tex.App.-San Antonio 1998, no pet.); *Brown v. Aztec Rig Equip., Inc.,* 921 S.W.2d at 845; *Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d 144, 146 (Tex.App.-Houston [1st Dist.] 1986, no writ). The consequence of this rule is that a party to a contract may not successfully claim that he believed the provisions of the contract were different from those plainly set out in the agreement or that he did not understand the meaning of the language used. *Brown v. Aztec Rig Equip., Inc.,* 921 S.W.2d at 846; *Texas Employers Ins. Ass'n v. Watkins,* 90 S.W.2d 622 (Tex.Civ. App.-Fort Worth 1936), *writ dism'd,* 130 Tex. 383, 110 S.W.2d 1153 (1937). However, there is a long-established and well-known exception to the rule: Where the execution of a contract is procured by fraud, misrepresentation, or concealment, such that there is no real assent to the agreement, assent may be negated and the binding nature of the contract avoided. *Edward Thompson Co. v. Sawyers,* 111

---

**2.** Furthermore, in response to Amouri's breach of contract claim, Southwest stated in its motion that a prior statement is inadmissible to vary the terms of an unambiguous contract. The parol evidence rule provides that extrinsic evidence will not be received if its effect is to vary, add to, or contradict the terms of a written contract that is complete in itself and unambiguous. *Guisinger v. Hughes,* 363 S.W.2d 861, 865 (Tex.Civ.App.-Dallas 1962, writ ref'd n.r.e.). The intent of the parties must ordinarily be ascertained from the contract alone. *Paxton v. Spencer,* 503 S.W.2d 637, 642–43 (Tex.Civ.App.-Corpus Christi 1973, no writ). However, it is also true that extrinsic evidence is admissible when fraud is practiced in inducing a person to enter into a written contract. The extrinsic evidence is admitted not to vary, add to, or contradict the terms of the writing, but to show that the writing itself, from its inception, never became legally effective because of fraud. *Guisinger v. Hughes,* 363 S.W.2d at 865; *Stone v. Williams,* 358 S.W.2d 151 (Tex. Civ.App.-Houston 1962, writ ref'd n.r.e.); *King v. Wise,* 282 S.W. 570 (Tex. Comm'n App.1926, rev'd on other grounds).

Tex. 374, 234 S.W. 873 (1921); *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d at 845.

 Southwest's version of the general rule is incomplete. Even the failure to read a contract will be excused where the execution of the contract has been fraudulently induced. In *Plains Cotton Coop.*, the court stated:

> Where one party's false representations induce another party to contract, negligence of the second party cannot be raised to bar relief to him. . . . . Thus, failure to read a contract before signing it, although it may constitute negligence, will not bar equitable relief to one who has executed a contract in reliance upon false representations made to him by the other contracting party.

*Plains Cotton Coop. Ass'n v. Wolf,* 553 S.W.2d at 803 (citations omitted). In addition, illiteracy is irrelevant where the contract was procured through fraud. In *Brown*, while the court stated that "illiteracy will not relieve a party of the consequences of [his] contract," the court recognized that "every person having the capacity to enter into contracts, in the absence of *fraud, misrepresentation or concealment,* must be held to have known what words were used in the contract and to have known their meaning . . . ." *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d at 846 (emphasis added) (quoting *Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d at 146). Although the law charges parties with knowledge of the contents of the contracts they sign, proof of fraudulent misrepresentations and reliance on such misrepresentations may permit parties to void their contracts.

 Southwest contends that in order for Amouri to successfully assert a fraud claim, it either must have prevented Amouri from reading the lease or it must have physically forced him to sign it. It argues that Amouri denied in his deposition that either occurred. It is true that where a party resorts to trick or artifice in order to prevent another from reading the contract or having it read to him, the aggrieved party may void the contract. *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d at 835 (quoting *Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d at 146). But this is not the only conduct that will give rise to a claim of fraudulent inducement. As we have noted, to prove fraudulent inducement, Amouri was required to show that Southwest made a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d at 47; *Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994). Silence is equivalent to a false representation where circumstances impose a duty to speak and one deliberately remains silent. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex.1986). In short, to prove his fraud claim, Amouri was required to show that Southwest engaged in a misrepresentation or a concealment. Amouri was not required to show that Southwest prevented him from reading the contract or physically forced him to sign it.

At oral argument, Southwest's counsel suggested that fraudulent inducement is proven by evidence of a *concealment* of a material fact that is not thereafter contradicted by the terms of a written contract. He stated that *Fisher Controls Int'l, Inc. v. Gibbons* deals with a concealment. In *Fisher*, the court addressed whether the evidence was legally and factually sufficient to support a finding of fraud. *Fisher Controls Int'l, Inc. v. Gibbons,* 911 S.W.2d at 140–43. Actually, Gibbons brought suit for fraud based on alleged affirmative misrepresentations, as well as concealments. *Id.* at 140. Gibbons alleged in part that Fisher told him before he signed the contract, which provided that Gibbons would represent Fisher for a three-year term, that Fisher would later extend the term beyond three years. *Id.* The contract provided in part, "Nothing contained herein

shall be deemed to create any express or implied obligation on either party to renew or extend this Agreement...." *Id.* at 141. Therefore, Fisher's alleged statements contradicted the terms of the written contract. The court, finding no evidence of fraud, held that Gibbons could not recover for the statements. *Id.* However, the court based its finding of no fraud not on the ground that the statements contradicted the terms of the written contract, but on the ground that Gibbons knowingly agreed to the three-year term. In other words, he did not rely on any misrepresentations. The court noted:

> Gibbons testified that he had read and understood the renewal provisions in the contract; that he had tried but failed to get Fisher to agree to a five-year term; that his attorney had advised him a three-year term was less than he needed if he was signing a five-year note; and that contrary to the attorney's advice, he accepted a three-year term.

*Id.* As for the alleged fraudulent concealments, the *Fisher* court held that the plaintiff could not recover for them, not because they were contradicted by the express terms of the contract, but because the defendant had no duty to disclose the information. *See id.* at 143.

Southwest's contention that the law charges parties with knowledge of the contents of the contracts they sign is incomplete. That contention is true only absent fraud, misrepresentation, or concealment. Fraud through misrepresentation or concealment is what Amouri relies on to establish his cause of action. In its motion for summary judgment, Southwest had the burden of proving that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. It did not succeed in disproving misrepresentation or reliance.

■ In its summary judgment motion, Southwest stated, "There is no evidence of a false representation or reliance in this case. This is one of the rare circumstances where nothing Plaintiff could say in an affidavit is sufficient to create a fact issue in this case." Southwest's real contention was that the law charges parties with knowledge of the contents of the contracts they sign, and thus there can be no evidence of misrepresentation or reliance. We have therefore construed the motion to be a traditional summary judgment motion. But, even if the language above placed the burden on Amouri to produce some evidence of misrepresentation and reliance, Southwest still would not be entitled to summary judgment. Amouri attached a controverting affidavit to his response to the motion for summary judgment, in which he alleged that Southwest discussed with him the form of payment he would use in *purchasing* the vehicle and at no time prior to signing the agreement did Southwest discuss his *leasing* the vehicle. He also alleged that he intended to purchase the vehicle and, based on what transpired at Southwest, believed he had done so. These allegations are sufficient to raise a fact issue regarding misrepresentation or concealment and reliance.

■ For the reasons stated, we hold that the trial court erred in granting summary judgment as to Amouri's causes of action based on fraudulent inducement only,[3] and we deny Southwest's request for sanctions. We do not reach Amouri's second point. Accordingly, we reverse the summary judgment as to fraudulent inducement and remand the case to the trial court for trial of that issue.

---

3. Amouri supported his claim for breach of contract only by his allegations of fraudulent inducement. Facts showing fraudulent inducement do not support a cause of action for breach of contract. Thus, summary judgment for Southwest on Amouri's breach of contract claim was proper. That claim is severed from the fraudulent inducement claim.