In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-357 CV


____________________



HANS JURGEN GUSTAVO ULRICH, ET AL., Appellants



V.



WOODFOREST NATIONAL BANK, Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 02-04-02508-CV






MEMORANDUM OPINION


 Fifty-four individual investors sued Woodforest National Bank ("WNB") alleging
they lost funds they invested in the Interamericas Group, a customer of WNB. The plaintiffs
appeal the trial court's order granting final summary judgment in favor of WNB. We affirm.

Background


 Members of the Pimienta family and Peter Ulrich controlled the Interamericas Group,
a group of approximately thirty offshore and domestic companies formed to invest foreign
money in the United States. According to the appellants, the Interamericas Group operated
from The Woodlands, Texas. Later, Rodolfo Garcia "essentially ran all operations of the
Group from its base in The Woodlands, Texas."

 In 1990, Ulrich and the Pimientas formed Integra Bank, an offshore bank in the
Netherlands Antilles. Integra Bank would receive funds from the Interamericas Group's
investors. In the mid 1990s, the Interamericas Group began to have difficulty paying
operating expenses, supporting the Pimientas' lifestyles, and repaying investors wanting to
withdraw their money. The Interamericas Group began soliciting investors for money to
fund these purposes, in effect creating a Ponzi scheme. (1)
 Representatives of the Interamericas
Group told the investors they were purchasing secure certificates of deposit or bearer notes
from Integra Bank. Instead, the Interamericas Group would invest the money hoping to earn
a rate of return sufficient to repay the investors and to provide income to the Interamericas
Group. The Interamericas Group collapsed in 2001 and the appellants, investors in the
Interamericas Group, maintain they lost approximately $50 million collectively.

 As a result of their alleged loss, appellants sued WNB, the members of the Pimienta
family, Garcia, Ulrich, Deloitte & Touche Curacao, Deloitte Touche Tohmatsu International,
Gerald L. Simpson CPA, Gerald L. Simpson, and other individuals. Appellants sued WNB
for aiding and abetting breach of fiduciary duty, fraud, aiding and abetting fraud, conspiracy
to commit fraud, aiding and abetting conversion, conspiracy to commit conversion, Texas
Securities Act violations, and aiding and abetting Texas Securities Act violations. Appellants
assert there is direct and circumstantial evidence of WNB's subjective awareness of the
Ponzi nature of the Interamericas Group, and that because the Interamericas Group was its
biggest customer, WNB should have terminated the banking relationship. Specifically, the
appellants assert WNB failed to report suspicious activity related to the Interamericas
Group's banking relationship with WNB and engaged in making both back-to-back and
participating loans that furthered the Interamericas Group's illegal actions. Appellants
maintain that because the Interamericas Group accounted for significant amounts of WNB's
revenue, WNB enabled the Interamericas Group to operate its Ponzi scheme which
proximately caused the appellants' losses.

 The claims against all defendants except Gerald L. Simpson CPA, Gerald Simpson,
and WNB were either non-suited or severed. The trial court entered summary judgment in
favor of Gerald L. Simpson CPA and Gerald L. Simpson. In separate orders, the trial court
also entered summary judgment in favor of WNB, sustained WNB's objections to appellants'
summary judgment evidence, and overruled appellants' objections to WNB's summary
judgment evidence. Appellants appealed both orders. Appellants, along with Gerald L.
Simpson CPA and Gerald L. Simpson, filed a motion to dismiss the appeal as to Gerald L.
Simpson CPA and Gerald L. Simpson, which this Court granted. Appellants continued the
appeal as to the trial court's order granting summary judgment in favor of WNB.

Issues on Appeal

 Appellants present fifteen issues on appeal. In their first issue, they argue the trial
court erred in granting the motion for summary judgment. Their second issue states WNB
failed to present sufficient summary judgment evidence as to the affirmative defense of
statute of limitations. In issues three, four, five, six, and seven, appellants maintain that they
presented more than a scintilla of evidence that WNB violated the Texas Securities Act. 
Appellants contend in issues eight, ten, eleven, and twelve, that they presented more than a
scintilla of evidence to support their causes of action against WNB for conspiracy, aiding and
abetting breach of fiduciary duty, aiding and abetting fraud, and aiding and abetting
conversion. Issues nine and thirteen address whether WNB's no evidence summary
judgment motion lacks the specificity required by Texas Rule of Civil Procedure 166(a)(I),
and whether the appellants were required to marshal their evidence in response to the no
evidence motion. In issues fourteen and fifteen, appellants assert the trial court erred in
denying their objections to WNB's summary judgment evidence, and in granting WNB's
objections to appellants' summary judgment evidence.

Trial Court's Orders Overruling Appellant's Objections to WNB's Summary Judgment
Evidence and Sustaining WNB's Objections to Appellants' Summary Judgment Evidence

 In their fourteenth and fifteenth issues, appellants contend that the trial court erred by
granting WNB's objections to appellants' summary judgment evidence and by denying
appellants' objections to some of WNB's evidence. We need not determine if the trial court
abused its discretion by denying appellants' objections to WNB's summary judgment
evidence because, as we explain below, even disregarding that evidence, appellants did not
raise a fact issue on all of WNB's summary judgment grounds. See Tex. R. App. P. 47.1. 
We must address WNB's objections to appellants' summary judgment evidence though, in
order to determine what summary judgment evidence, if any, the trial court should have
considered in entering its order on WNB's motion for summary judgment.

Jorge Corona Affidavit

 Appellants offered as summary judgment evidence the affidavit of Jorge Corona,
former in-house general counsel for the Interamericas Group "because of its general
discussion of the Group's operation[,]" and how the operation operated like a Ponzi scheme. 
Attached to the affidavit is a transcription of a taped interview of Corona. WNB objected
to the affidavit and the attached transcription arguing the affidavit does not state that the facts
are within Corona's personal knowledge and does not respond to any issue within WNB's
motion for summary judgment. WNB contends the interview transcript is unsworn, and is
inadmissible because the affidavit does not state that each and every statement contained in
the interview is true, correct, and in Corona's personal knowledge.

 The affidavit states that Corona agreed to the transcribed interview by the appellants'
attorneys, that he reviewed the attached transcription, that the transcript is "generally
accurate," but that the "statements outlined in the transcript that are attributable to [him] are,
in fact, [his] own, were made voluntarily, and based on [his] knowledge and memory are true
and correct unless [he] noted in the interview that [he] was speculating, guessing or had no
real knowledge of the subject matter[.]" Corona states in his affidavit that the transcript is
"generally accurate" because there are "inaudible[s]" noted by the transcriber. Texas Rule
of Civil Procedure 166a(f) requires that copies of papers referred to in summary judgment
affidavits must be sworn or certified. Tex. R. Civ. P. 166a(f). To be legally sufficient, an
affidavit must "positively and unqualifiedly represent the facts as disclosed in the affidavit
to be true and within the affiant's personal knowledge." Humphreys v. Caldwell, 888 S.W.2d
469, 470 (Tex. 1994)(citing Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); Burke
v. Satterfield, 525 S.W.2d 950, 955 (Tex. 1975). The Brownlee Court explained that, absent
statutory authorization, "an affidavit is insufficient unless the allegations contained therein
are direct and unequivocal and perjury can be assigned upon it." Brownlee, 665 S.W.2d 111,
112. Corona qualifies his sworn statement with the proviso "unless I noted in the interview
that I was speculating, guessing or had no real knowledge of the subject matter." Without
identifying each and every statement which Corona contends is speculative, a guess or a
response without real knowledge of the subject matter, his statements are not sufficiently
direct and unequivocal whereby perjury might be assigned upon them. Thus, the trial court
did not abuse its discretion in sustaining WNB's objections to Corona's affidavit.

Lowell Goode Affidavit, Investor Affidavits, and Second Affidavits of Hans Ulrich,
Alberto Krahl, Ernesto Aue, and Luis De La Pena Stettner


 The affidavit of Lowell Goode, C.P.A., appellants' designated expert in accounting
matters, discussed facts from the deposition of George Simpson, the Interamericas Group's
former C.P.A. WNB objected to the affidavit because nothing in the report relates to any
allegation relating to WNB.

 Appellants also submitted affidavits from twelve of the fifty-four appellants as
summary judgment evidence. Each of the twelve affidavits generally stated that the affiant
was contacted by representatives of the Interamericas Group in an attempt to have the affiant
invest in the Group, that the affiant received documents from the Interamericas Group
representing that any investment would be placed in offshore companies and in banks such
as Integra, and that each was told of financial statements and audits of the Interamericas
Group by respected international accounting firms. WNB objected to the twelve affidavits
because "[n]one of the affiants state a single fact relating to WNB or state that WNB did
anything wrong." 

 In the second affidavits of Hans Ulrich, Alberto Lenz, Ernesto Aue, and Luis De La
Pena Stettner, each affiant states he was a former investor in the Interamericas entities. Each
affiant also states that up until 2000 he had no problems with the investments, that in 2000
he "became aware of some difficulty making withdrawals," he was constantly assured by
Interamericas Group's representatives that it was only a "short term cash flow problem," that
he did not "receive a return of [his] funds," and that each learned in 2003 that his losses were
attributable to the Interamericas Group's illegal activity. They also state that they were
"never given any information indicating the extent of [WNB]'s involvement with [the]
Interamericas [Group]" until 2003. WNB objected to these affidavits and argued they are
not relevant because they provide no facts or evidence of appellants' loss or any act or
omission on the part of WNB. These documents though, are generally relevant to explain
the reasons appellants invested in the Interamericas Group, the operations of the
Interamericas Group, and representations made by the Interamericas Group to the appellants. 
The trial court abused its discretion in granting WNB's objections as to these documents.Jorge Hollander Affidavit

 Appellants submitted as summary judgment evidence the affidavit of Jorge Hollander,
a former employee of one company that was part of the Interamericas Group and former
president of another company that was part of the Interamericas Group. Hollander states how
the Interamericas Group solicited investor funds through Integra Bank, that the Group sent
the investors statements showing the investors' investments were in the form of CDs in
Integra Bank, and that the investors' funds deposited in Integra Bank were later invested in
American banks. He acknowledged that Hugo Pimienta and the Interamericas Advisory
Board often withdrew investor funds at Integra for meeting the financial needs of the
Interamericas Group and those controlling the Interamericas Group. WNB argues the
affidavit is conclusory and irrelevant to any issue of material fact asserted as to WNB or that
relates to the issues raised in WNB's Motion for Summary Judgment.

 The affidavit is relevant because it discusses the appellants' claims of the
Interamericas Group's improper handling of its investors' funds. WNB's objection to the
affidavit that it is "conclusory" is not sufficiently specific. See Stewart v. Sanmina Tex., L.P.,
156 S.W.3d 198, 207 (Tex. App.--Dallas 2005, no pet.); Womco, Inc. v. Navistar Int'l Corp.,
84 S.W.3d 272, 281 n.6 (Tex. App.--Tyler 2002, no pet.) (objection that individual paragraph
of affidavit "contains unsubstantiated legal conclusions" is insufficient because it fails to
identify which statements in that paragraph are objectionable); Garcia v. John Hancock
Variable Life Ins. Co., 859 S.W.2d 427, 434 (Tex. App.--San Antonio 1993, writ denied)
(objection that individual paragraphs contained "speculation" and "conclusion" insufficient). 
The trial court abused its discretion in sustaining WNB's objection as to Hollander's
affidavit.

Office of the Comptroller of the Currency Publication

 Appellants attached as summary judgment evidence an OCC publication entitled "Red
Flags in Board Reports: A Guide for Directors." WNB objected to the article's relevancy
because after the publication of the article in September 2000, WNB made "substantially no
new loans, which appear to be the subject of the allegations of improper banking activity by
[the appellants.]" However, WNB concedes it did not end all banking with the Interamericas
Group until 2001. The trial court abused its discretion in granting WNB's objection to this
OCC publication.

J.F. "Chip" Morrow Affidavit


 WNB objected to four conclusions reached by J.F. "Chip" Morrow in his affidavit. 
The four Morrow statements which WNB argues are conclusory include: (1) WNB aided and
abetted fraud by the Interamericas Group by disregarding OCC published red flags, the Bank
Secrecy Act, and industry standards; (2) WNB was aware that the Interamericas Group was
engaged in illegal activities; (3) WNB aided fraud by entering into back to back and
participation loans which enabled the diversion of investors' funds to fraudulent uses by the
Interamericas Group as well as WNB investment vehicles used to attract investor funds; and
(4) WNB should have filed Suspicious Activity Reports ("SARs") but did not. Morrow
stated in the affidavit that his opinions are based upon applicable financial institution
industry parameters, over 12,000 pages of WNB and Interamericas Group documents,
reference materials including OCC publications, and his thirty-nine years of
business/mortgage/financial institution experience.

 Conclusory statements are insufficient to defeat summary judgment. 1001 McKinney
Ltd. v. Credit Suisse First Boston Mortg. Capital, 192 S.W.3d 20, 27 (Tex. App.--Houston
[14th Dist.] 2005, pet. denied) (citing Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex.
1997)); see also Tex. R. Civ. P. 166a(f). Statements are conclusory if they fail to provide
underlying facts to support their conclusions. Id. (citing Rizkallah v. Conner, 952 S.W.2d
580, 587 (Tex. App.--Houston [1st Dist.] 1997, no writ)).

 Morrow concluded that WNB aided and abetted fraud by the Interamericas Group by
ignoring certain OCC published red flags, and WNB was aware that the Interamericas Group
was engaged in illegal activities. Morrow listed several types of banking activity that
Morrow claimed the Interamericas Group engaged in that were OCC "red flags" of
suspicious activity. In support of his statement that WNB was aware of these "red flags,"
Morrow referenced certain pages of WNB President and Chief Operating Officer Ann
Thomas's deposition. In the referenced pages, Thomas admits the Interamericas Group made
frequent wire transfers, one of the "red flags" published by the OCC, but Thomas also
explains in her deposition that the transactions did not concern her because of the
Interamericas Group's history with the bank and she did not think any of the transactions
were suspicious or illegal. The affidavit does not otherwise contain underlying facts to
support his conclusion that WNB was aware that the Interamericas Group was engaged in
illegal activities. 

 Morrow's further conclusion that WNB aided fraud by entering into back to back and
participation loans which enabled the diversion of investors' funds to fraudulent uses by the
Interamericas Group as well as WNB investment vehicles used to attract investor funds is
also unsupported by underlying facts. He provides no underlying facts to show how the back
to back and participation loans were knowingly part of any scheme by WNB to aid in the
Interamericas Group's fraudulent activity. Morrow references no particular part of the record
or any document reviewed to support this conclusion. He also makes no attempt to explain
how such loans are illegal or a vehicle for fraud, or how these loans caused injury to the
appellants. (2) 

 Last, Morrow concludes WNB's failure to report the Interamericas Group's suspicious
activity enabled the Interamericas Group to operate its alleged scheme and proximately cause
appellants' losses. In support of this conclusion, Morrow states that WNB failed to file
SARs with the OCC. WNB objected to the conclusion stating that no SAR or testimony
relating to SARs is contained in the discovery of the case because of privileges asserted. 
Morrow provides no underlying facts, record references, or documents supporting his
conclusion that WNB did not file any SARs. Morrow also fails to provide underlying facts
to support this or his further conclusion that WNB's failure to report the Interamericas
Group's suspicious activity enabled the Group to engage in illegal activity. We find the trial 

court properly exercised its discretion in sustaining WNB's objection to Morrow's affidavit. 
Summary Judgment


 We now turn to appellants' first, ninth, and thirteenth issues addressing the trial
court's granting of the summary judgment. WNB moved for summary judgment on both no
evidence and traditional grounds. See Tex. R. Civ. P. 166a(c),(I). We review a no evidence
summary judgment under the same standard as a directed verdict. King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003). Accordingly, we examine the record in the
light most favorable to the non-movant, crediting evidence favorable to the non-movant if
reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could
not. See Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006). If the non-movant
produces more than a scintilla of probative evidence to raise a genuine issue of material fact,
then summary judgment is improper. Tex. R. Civ. P. 166a(i); King Ranch, 118 S.W.3d at
751. A party produces more than a scintilla of evidence if the evidence allows reasonable
and fair-minded people to differ in their conclusions. King Ranch, 118 S.W.3d at 751 (citing
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). A party produces
less than a scintilla of evidence when the evidence is "'so weak as to do no more than create
a mere surmise or suspicion'" of fact. Id. (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983)). When, as here, a trial court's order granting summary judgment does
not specify the grounds relied upon, we affirm the summary judgment if any of the summary
judgment grounds is meritorious. FM Props. Operating Co. v. City of Austin, 22 S.W.3d
868, 872 (Tex. 2000).

 In issues nine and thirteen, appellants maintain WNB's no evidence motion for
summary judgment lacks the specificity required by Rule 166a(i) and that the appellants were
not required to marshal all of their evidence. Appellants rely on Michael v. Dyke, 41 S.W.3d
746, 751-52 (Tex. App--Corpus Christi 2001, no pet.) and Amouri v. Sw. Toyota, Inc., 20
S.W.3d 165, 168 (Tex. App.--Texarkana 2000, pet. denied) for their argument that WNB's
challenge of the damage element in its no evidence summary judgment motion lacks
specificity, and therefore is treated like a traditional motion for summary judgment with the
movant bearing the burden. Appellants' reliance is misplaced. Texas Rule of Civil
Procedure 166a(i) requires a motion to be specific in alleging a lack of an essential element
of the plaintiff's alleged cause of action. See Tex. R. Civ. P. 166a(i); Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002). In Amouri, the Texarkana Court of
Appeals treated the summary judgment as a traditional summary judgment because the
motion failed to follow rule 166a(i) by identifying the particular elements in dispute. 
Amouri, 20 S.W.3d at 168. In Michael, the Corpus Christi Court of Appeals presumed that
the motion was filed under the traditional summary judgment rules and analyzed under that
standard of review because the motion intermixed language from the traditional summary
judgment rule and the no evidence rule, failed to clearly state under which rule summary
judgment was sought, failed to identify the particular elements in dispute, and attached
evidence appropriate for a traditional motion, instead of a no evidence motion. Michael, 41
S.W.3d at 751-52. In the present case, WNB filed a "hybrid" motion clearly arguing
separately for a traditional and no evidence summary judgment, and identified proximate
cause and damages as elements in dispute. Within WNB's no evidence motion, it
specifically states, "[WNB] is entitled to summary judgment because Plaintiffs cannot
demonstrate there is any evidence to support causation or any damages against [WNB]." 
WNB's no evidence motion on these elements was sufficiently specific to satisfy Rule
166a(i). We overrule issues nine and thirteen. 

 Appellants' first issue complains generally that the trial court erred in granting
summary judgment. In WNB's no evidence motion for summary judgment and on appeal,
WNB argues that appellants failed to produce any evidence as to either causation or damages
for any of their causes of action. We agree. Texas Rule of Civil Procedure 166a(i) requires
a court to grant a no evidence motion for summary judgment if the movant can show that
adequate time for discovery has passed and the non-movant has no evidence to support one
or more essential elements of its claims. Tex. R. Civ. P. 166a(i). WNB challenged the
causation and damages elements for appellants' claims in its no evidence motion for
summary judgment with sufficient particularity, which then placed the burden on the
appellants to produce more than a scintilla of evidence to raise a genuine issue of material
fact on the challenged elements. See id.; Forbes Inc. v. Granada Biosciences, Inc., 124
S.W.3d 167, 172 (Tex. 2003).

 After considering the summary judgment evidence properly admitted and those
affidavits we hold herein were improperly excluded, appellants failed to produce more than
a scintilla of evidence raising a genuine issue of material fact as to the elements of proximate
cause and damages. Only twelve of the fifty-four appellants submitted affidavits as summary
judgment evidence, but none mentioned proximate cause or the amount of their damages or
even that they sustained damages. Only three of the twelve investor-affiants even discussed
amounts they had invested in the Interamericas Group. Goode's affidavit only references
appellants' damages collectively when he states, "In my opinion, [Gerald L. Simpson]
violated his professional duty in this situation which contributed to the continuation of the
problem which eventually resulted in significant losses to the investor group." As WNB
moved for a no evidence summary judgment against each plaintiff, each plaintiff was
required to submit probative summary judgment evidence to preclude summary judgment.

 While pleadings are not summary judgment evidence, appellants' live pleadings allege
that they "continued receiving account statements showing that their investments were safe
and profitable until early 2002." Further pleading their damages, appellants plead their
damages as ". . . being the difference between their investment with the Group and the
amount plaintiffs have recovered to date." We find appellants have failed to present even
a scintilla of probative summary judgment evidence to preclude a no evidence summary
judgment on the elements of proximate cause and damages. See, e.g., Cohen v. Arthur
Andersen, L.L.P., 106 S.W.3d 304, 306-07 (Tex. App.--Houston [1st Dist.] 2003, no pet.)
(Trust beneficiaries unable to defeat no evidence summary judgment because they failed to
establish that accounting firm defrauded them in regard to management of trust funds, where
beneficiaries presented no evidence of existence and amount of damages they incurred).

Conclusion 

 Because appellants failed to present any competent summary judgment evidence on
the elements of proximate cause and damages, the trial court did not err in granting WNB's
motion for summary judgment. See Tex. R. Civ. P. 166a(i). We do not reach appellants'
remaining issues. See Tex. R. App. P. 47.1. The trial court's order granting final summary
judgment in favor of WNB is affirmed.

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on June 14, 2007

Opinion Delivered December 20, 2007


Before McKeithen, C.J., Kreger and Horton, JJ.
1. "A 'Ponzi scheme,' a term 'derived from one Charles Ponzi, a famous Boston
swindler. With a capital of $150, Ponzi began to borrow money on his own promissory
notes at a 50% rate of interest payable in 90 days. Ponzi collected nearly $10 million in 8
months . . . using the funds of new investors to pay off those whose notes had come due.' 
United States v. Shelton, 669 F.2d 446, 449 n.2 (7th Cir. 1982)." See Sterling Trust Co. v.
Adderley, 168 S.W.3d 835, 838 n.1 (Tex. 2005).


2. George Sowers, Regional President of WNB, testified in his deposition attached
as appellants' summary judgment evidence, to the legitimacy of such loans, explaining
that these types of loans are common with Mexican borrowers because the loans provided
tax incentives for the borrower when loans were structured as back to back or
participation loans.