Opinion filed April 22,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00224-CV

                                                    __________

 

 RAY ATHEY, A/K/A RAY D.
ATHEY AND BELINDA ATHEY, Appellant

 

                                                             V.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS 

NOMINEE FOR LENDER, ITS SUCCESSORS
AND ASSIGNS, Appellee



 

                                   On
Appeal from the 414th District Court

 

                                                        McLennan
County, Texas

 

                                                 Trial
Court Cause No. 2008-477-5

 



 

                                                                  O
P I N I O N

 

Ray
Athey, a/k/a Ray D. Athey and Belinda Athey sued Mortgage Electronic
Registration Systems, Inc. (            MERS) as Nominee for Lender, Its
Successors and assigns, for fraud in connection with a home equity loan.  MERS
filed a motion for summary judgment.  The trial court granted that motion and
found that the Atheys were in default on a promissory note, that MERS was the
beneficiary of a deed of trust securing their note, and that MERS was entitled
to proceed with nonjudicial foreclosure.  We affirm.

I.  Background
Facts

             The
Atheys executed a promissory note payable to Decision One Mortgage Company,
LLC.  The note was secured by 2.5057 acres, and the Atheys executed a deed of
trust that named MERS as Decision One’s nominee and the mortgagee.  The note was
entitled: 

TEXAS HOME EQUITY
NOTE

(Cash Out –
Adjustable Rate – First Lien)

(LIBOR Six-Month
Index (As Published in the Wall Street Journal) – Rate Caps)

 

THIS NOTE
CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY
PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE I MUST PAY.

 

In contrast to
this language, the Atheys contended that an unnamed representative of Decision
One told them at closing that the note had a fixed interest rate.  The Atheys
corroborated this contention with an affidavit from a disinterested person who
was also present at closing.

            Two
years later, Decision One raised the interest rate from 7.79% to 10.79%.[1]
The Atheys became delinquent, and HomEq Servicing Corporation, as servicer for
MERS, notified the Atheys that, if their delinquency was not cured, it would
accelerate the note.  The Atheys were unable to do so, and MERS accelerated the
note and initiated foreclosure proceedings.  The Atheys then filed this suit.

II. 
Issues

The
Atheys challenge the summary judgment with two issues, contending that the
trial court erred because there was a material question of fact on their
fraudulent inducement cause of action and because MERS failed to establish that
it was the owner and holder of the note.

III.  Discussion

A.    Standard
of Review. 

Questions
of law are reviewed de novo.  St. Paul Ins. Co. v. Tex. Dep’t of Transp.,
999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied).  To determine if a
fact question exists, we must consider whether reasonable and fair-minded
jurors could differ in their conclusions in light of all the evidence
presented.  Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755
(Tex. 2007).  We must consider all the evidence in the light most favorable to
the nonmovant, indulging all reasonable inferences in favor of the nonmovant,
and determine whether the movant proved that there were no genuine issues of
material fact and that it was entitled to judgment as a matter of law.  Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

B.     Fraudulent
Inducement.

To
establish fraud, a claimant must prove:  (1) that a material representation was
made; (2) that the representation was false; (3) that, when the speaker made
the representation, he knew it was false or made it recklessly without
knowledge of the truth as a positive assertion; (4) that the speaker made it
with the intention that it should be acted upon by the claimant; (5) that the
claimant acted in reliance upon it; and (6) that the claimant thereby suffered
injury.  Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,
962 S.W.2d 507, 524 (Tex. 1998).  Fraudulent inducement is a particular species
of fraud that arises only in the context of a contract and requires the
existence of a contract as part of its proof.  Haase v. Glazner, 62
S.W.3d 795, 798 (Tex. 2001).  

The
Atheys contended that they were defrauded when the Decision One representative
misrepresented that the interest rate was fixed.  MERS moved for summary
judgment on this claim, arguing that the note fully disclosed that the interest
rate was variable.  The Atheys do not dispute that the note unambiguously
provided for an adjustable interest rate but contend that, absent proof of
their actual knowledge, the rate was variable (knowledge which cannot be
inferred merely from what they would have learned had they read the note),
testimony that the representative said the interest rate was fixed is
sufficient to preclude summary judgment.  The Atheys rely upon Trenholm v.
Ratcliff, 646 S.W.2d 927, 933 (Tex. 1983), for the proposition that, “[w]here
one has been induced to enter into a contract by fraudulent representations,
the person committing the fraud cannot defeat a claim for damages based upon a
plea that the party defrauded might have discovered the truth by the exercise
of proper care.”  

Trenholm
involved a common-law fraud action based upon oral misrepresentations made by a
local developer to home builders during a meeting designed to solicit their
participation in a new subdivision.  The developer told the builders that a
nearby mobile home park would be closed and the site bulldozed so that, by the
time of the subdivision’s grand opening, “it will be like there’s never been a
park there.”  Id. at 929.  One of the builders thereafter built eighteen
houses in the subdivision.  The mobile home park was not closed by the time
these houses were completed, the subdivision did poorly, and the eighteen
houses were sold at a loss.  Id.  The jury found that the developer made
a material misrepresentation and that the builder detrimentally relied upon
this misrepresentation.  The developer argued that this was insufficient to
constitute fraud because there was no evidence that the builder exercised due
diligence and that he could have easily ascertained the status of the trailer
park prior to building any homes.  Id. at 933.  The supreme court
rejected this argument, holding that proof of due diligence was not an element
of detrimental reliance.  Id.  

Trenholm
makes clear that the Atheys were not required to independently investigate the
Decision One representative’s statement before relying upon it.  But does this
mean that they could rely upon an oral statement clearly inconsistent with
conspicuous provisions of the note?  The Atheys respond positively and direct
us to Amouri v. Sw. Toyota, Inc., 20 S.W.3d 165 (Tex. App.—Texarkana
2000, pet. denied).  In that case, the plaintiff was led to believe that he was
signing purchase papers for a car, but he instead signed a lease agreement. 
The Texarkana Court held that, when the execution of a contract is procured by
fraud, misrepresentation, or concealment, there is no assent and, therefore, no
binding contract. Id. at 169.  The Atheys reason that, because the
Decision One representative’s statement induced them to sign the note, they
could rely upon it even if it was contradicted by a conspicuous note provision.

The
Atheys read too much into Amouri.  Even though the Texarkana Court voided
the lease agreement because of a misrepresentation, it specifically noted that
“a party to a contract may not successfully claim that he believed the
provisions of the contract were different from those plainly set out in the
agreement or that he did not understand the meaning of the language used.”  Id. 
Thus, Amouri does not stand for the proposition that all pre-execution
oral statements that are inconsistent with the terms of the written agreement
are sufficient to vitiate assent.  Instead, Amouri would require a
determination of whether the misrepresentation was such that there was never a
meeting of the minds.  

Other
courts have taken a slightly different approach by considering whether a party
could justifiably rely upon an oral statement.  In this instance, courts have
held that reliance upon an oral representation that is directly contradicted by
the express, unambiguous terms of a written agreement is unjustified as a
matter of law.  See, e.g., DRC Parts & Accessories, L.L.C. v. VM
Motori, S.P.A., 112 S.W.3d 854, 858-59 (Tex. App.—Houston [14th Dist.]
2003, pet. denied) (one who enters into a written contract while relying on a
contrary oral agreement does so at its peril and may not pursue a fraudulent
inducement claim when the other party asserts its contractual rights).[2]

Recent
Texas Supreme Court decisions suggest that hard and fast rules for when
contracting parties may justifiably rely upon oral representations will not
always be easily ascertainable.  See, e.g., Forest Oil Corp. v. McAllen,
268 S.W.3d 51 (Tex. 2008); and Schlumberger Tech. Corp. v. Swanson, 959
S.W.2d 171 (Tex. 1997).[3] 
But the court has ratified the concept that, to vitiate a contract, “the fraud
must be something more than merely oral representations that conflict with the
terms of the written contract.”  Swanson, 959 S.W.2d at 179 (citing Distrib.
Inv. Co. v. Patton, 110 S.W.2d 47, 48 (Tex. 1937)).

Even
if bright-line rules for determining whether reliance is justified are
sometimes wanting, Texas courts have been more stringent in their analysis of
fraudulent inducement claims when the contract is a promissory note.  See
Town N. Nat’l Bank v. Broaddus, 569 S.W.2d 489, 493 (Tex. 1978) (to prevail
in asserting fraud as an affirmative defense to a promissory note, the defendant
must show some “trickery, artifice, or device”); see also Simmons v.
Compania Financiera Libano, 830 S.W.2d 789, 791 (Tex. App.—Houston [1st
Dist.] 1992, writ denied) (the clear terms of a negotiable instrument cannot be
varied by a parol agreement that purports to change the obligor’s
responsibilities); Tripp Vill. Joint Venture v. MBank, Lincoln Ctr., N.A.,
774 S.W.2d 746, 749 (Tex. App.—Dallas 1989, writ denied) (defendant could not
prove fraud by extrinsic evidence until it demonstrated that it was tricked
into executing the security agreement).  The policy behind this heightened
proof requirement is to avoid uncertainty and confusion in the law of
promissory notes.  Broaddus, 569 S.W.2d at 492.  This is particularly
appropriate when one considers that they are frequently negotiable instruments.

The
Atheys’ evidence does not establish the trickery, artifice, or device necessary
to void a promissory note.  The oral representation upon which they rely is
directly, clearly, and conspicuously contradicted by the note’s heading and
introductory paragraph.  We do not hold that a fraudulent inducement cause of
action can never lie merely because the operative oral representation is
contradicted by a provision within the contract.  But in this instance, the Atheys
could not reasonably rely upon an oral representation that was so plainly
contradicted.  The trial court did not err by granting MERS’s motion for
summary judgment.  Issue One is overruled.

C.     Owner
and Holder. 

The
Atheys next complain that the trial court erred because MERS failed to prove
that it was the owner and holder of the note.  The note is payable to the order
of Decision One.  The deed of trust designated MERS as the mortgagee and as
Decision One’s nominee.  MERS attached the affidavit of Noriko Colston to its
motion for summary judgment.  Colston testified that she was the assistant secretary
and custodian of records for HomEq, that HomEq was a mortgage servicer for
MERS, and that it was responsible for the day-to-day management of the Atheys’
note.  She authenticated the note, deed of trust, notice of default and intent
to accelerate, and the Atheys’ payment history as HomEq’s business records. 
She also testified that Decision One was the owner and holder of the note.

The
Atheys did not object to this affidavit testimony, but Ray Athey testified in
his affidavit that, “[b]ased upon my information and belief, [MERS] is not the
owner of the note in question and does not have authority to bring suit on the note
and foreclose under the deed of trust.”  On appeal, the Atheys argue that
Colston had no personal knowledge of any of the underlying documents because
they were created by a third-party company.  Because they did not object to
Colston’s affidavit, they may not challenge her personal knowledge on appeal.  See
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 677 (Tex. 1979)
(a party must object in writing to formal deficiencies in the summary judgment
proof or waive the objection).  Form defects include the affiant’s lack of
personal knowledge.  Stewart v. Sanmina Tex. L.P., 156 S.W.3d 198, 207
(Tex. App.—Dallas 2005, no pet.).  Moreover, the mere fact that Colston was
employed by HomEq does not preclude her testimony.  See Houston Shell &
Concrete Co. v. Kingsley Constructors, Inc., 987 S.W.2d 184, 186 (Tex.
App.—Houston [14th Dist.] 1999, no pet.) (Tex.
R. Evid. 803(6) does not require the affiant to be the creator of the
document or even an employee of the company keeping the record but does require
that the affiant establish that they or others in their company knew of the
events recorded on the third-party documents).

Even
if the Atheys’ evidentiary challenge had been preserved below, on appeal, the
Atheys argue that there is no evidence establishing that MERS is the owner and
holder of the note.  MERS never contended that it owned or held the note.  The
documents and Colston’s affidavit establish that Decision One was the owner and
holder.   And even if Ray Athey’s affidavit and their appellate issue are read
as a challenge to MERS’s authority to bring this suit, the deed of trust
clearly gives MERS that authority.  The trial court did not err by holding that
MERS was entitled to proceed with nonjudicial foreclosure.  Issue Two is
overruled

IV.  Conclusion

The judgment of the trial court is affirmed.

 

 

                                                                                    RICK
STRANGE

                                                                                    JUSTICE

 

April 22, 2010

Panel consists of:  Wright, C.J., 

McCall, J., and Strange, J.

 









                [1]The note established a yearly interest rate of 7.79%
but provided that “[t]he interest rate I will pay may change on the 1ST day
of SEPTEMBER, 2007, and on that day every sixth month thereafter.  Each
date on which my interest rate could change is called a ‘Change Date.’”  The
interest rate was to be calculated by adding 6.79% to the average of interbank
offered rates for six-month U.S. dollar-denominated deposits in the London
market.  10.79% represented the largest permissible interest rate that could be
charged on September 1, 2007, but the rate could continue to increase 1% every
six months until it reached 13.79%.  The interest rate could never be less than
7.79%.





                [2]See also Wuertz v. Nationwide Life Ins. Co., No. 01-07-00272-CV, 2009 WL 1331860 (Tex.
App.—Houston [1st Dist.] May 14, 2009, no pet.) (plaintiff could not rely upon
statement that life insurance policy required only one $300,000 premium payment
when policy and policy application clearly indicated that it required an annual
$300,000 premium payment).

 





                [3]
For example, in McAllen, the court instructed lower courts faced with a
waiver-of-reliance provision in a contract to consider whether:  (1) the terms
of the contract were negotiated, rather than boilerplate, and if the parties
specifically discussed the issue that has become the topic of the subsequent
dispute during their negotiations; (2) the complaining party was represented by
counsel; (3) the parties dealt with each other in an arm’s length transaction;
(4) the parties were knowledgeable in business matter; and (5) the release
language was clear.  268 S.W.3d at 60.