Harman E. GUISINGER d/b/a Guisinger Realty Company, Appellant,

v.

Dudley M. HUGHES, Appellee.

No. 16087.

Court of Civil Appeals of Texas.

Dallas

Dec. 14, 1962.

Rehearing Denied Jan. 11, 1963.

**862**

Gragg, Storey & Griffith, Dallas, for appellant.

Esir Tobolowsky and E. D. Hurt, Dallas, for appellee.

DIXON, Chief Justice.

Appellant Harman E. Guisinger, d/b/a Guisinger Realty Company, sued appellee Dudley M. Hughes for a real estate commission claimed to be due under the terms of an alleged written contract for the exchange of properties between Hughes and James L. Bryson.

Hughes defended on the grounds that Guisinger was guilty of fraud in inducing him, Hughes, to enter into the agreement, and that the instrument he signed was conditionally delivered to Guisinger prior to the time it was signed by Bryson, and that the condition was never fulfilled, Guisinger also filed motions for summary judgment, instructed verdict and judgment non obstante veredicto, all of which motions were overruled.

A jury returned a verdict finding that (1) Guisinger had represented to Hughes prior to execution of the instrument dated March 9, 1959, that he was obtaining only $450 of the commission due him from Bryson, and that Hughes would have to pay the $1600 in question only if Bryson did not pay the full commission of $2,050; (2) Hughes relied upon and believed the truth of the representation; and (3) the representation was false.

Based on the jury verdict judgment was rendered in favor of appellee Hughes that appellant Guisinger take nothing.

### EVIDENCE

The instrument in question, with blank spaces filled in by typewriter, was prepared on a printed form.

The writing provided that Dudley M. Hughes, First Party, and James L. Bryson, Second Party. would exchange Hughes' Somervell County property of 419.33 acres for Bryson's Dallas County property of 33.61 acres. Hughes' property was valued at $32,000 and Bryson's property at $41,000. The contract stipulated that Hughes would pay the difference of $9,000 to Bryson in cash.

It was recited that Guisinger Realty Company, as agent, would represent both of the parties. It was also recited that each of the parties had deposited with Guisinger the sum of $1,000, receipt of which was acknowledged.

There were two blank spaces in the instrument, one of them applying to Hughes the other one to Bryson, where the amounts of the commissions to be paid by the parties were to be filled in. In each blank space, that for Hughes as well as that for Bryson, instead of the amount there was the typewritten statement "See letter attached."

The instrument so drawn was signed by Hughes on March 4, 1959. On the same date Hughes also signed a letter which was attached to the writing. The letter addressed to the Guisinger Realty Company is as follows:

> "Re Exchange of property
> 420 acres located at
> Route 1, Paluxy, Texas.

"Gentlemen:

"I hereby agree to pay you for services rendered in the exchange of my property at the above location the sum of One Thousand Six Hundred Dollars ($1,600) when the exchange is completed and deeds are passed according to the contract I have signed dated March 4, 1959 for the 33 acres in the

A. M. James Survey, Abstract #690, Dallas County, Texas.

"Yours very truly
"/s/ Dudley M. Hughes."

At the time Hughes signed the written instrument on March 4, 1959 Bryson had not signed. He did sign six days later, on March 10th, 1959. Also on March 10, 1959 Bryson signed a letter agreeing to pay Guisinger $2,050 as a real estate commission. Obviously this letter of Bryson's could not have been attached to the written agreement when Hughes signed on March 4, 1959. In fact the letter from Bryson was never attached to the agreement signed by Hughes. Furthermore, neither Hughes nor Bryson deposited $1,000 with Guisinger. Hughes testified that he never saw Bryson's letter until long after their real estate deal had been closed.

Introduced into evidence at the trial was a written listing agreement dated December 30, 1958 providing for Guisinger to act as Bryson's exclusive agent for a term of 180 days in the sale of Bryson's land for a sale price of $41,000. The listing agreement provided that Bryson should pay a commission of 5%. This would amount to the sum of $2,050 as Guisinger's commission for selling Bryson's property. The Hughes property had not been listed with Guisinger.

In other particulars the evidence is often conflicting and sometimes confusing. Hughes testified that Guisinger's salesman, Albert D. Lindsey, contacted him in an effort to interest him in purchasing Bryson's property. Hughes was interested, but informed Lindsey an exchange of properties would be necessary in order for him to acquire the Bryson property.

In due time Hughes met Guisinger at the latter's office. Bryson was not present. Hughes testified that he at first refused to sign the letter wherein he agreed to pay Guisinger $1600 as a commission. His position was that Bryson had listed his property with Guisinger for sale for $41,000 and that Guisinger had merely located Hughes as a prospective purchaser. In other words, Bryson was the seller and Hughes was the purchaser; therefore Bryson should pay the whole commission.

According to Hughes it was then represented to him by Guisinger that Bryson had stated that he would pay a 5% commission only on the $9,000 cash which he was to receive in the exchange of the properties. He would not sign the contract unless he had some assurance or guarantee that Hughes would pay the balance of $1600 of Guisinger's commission. Guisinger further stated, according to Hughes, that if Bryson could be induced to pay more than $450 on Guisinger's commission, Hughes would be obligated to pay only the difference necessary to enable Guisinger to receive his total commission of $2,050. Hughes testified that it was because of these representations, which he believed to be true, that on March 4, 1959 he signed the printed form of contract and the letter which was to be attached. These documents were then delivered to Guisinger so that he might show them to Bryson and obtain Bryson's signature and letter.

The undisputed evidence shows that Bryson was not interested in an exchange of properties. He would not part with his property except for $41,000 in cash. He refused to sign the agreement which Guisinger had drawn up unless arrangements were first made to sell the Hughes property and the proceeds used to make out his $41,000 selling price.

Faced with this situation Guisinger contacted a real estate agent in Honey Grove, Texas. This agent almost immediately found a purchaser for the Hughes property. The cash proceeds from this sale made it possible for Bryson to obtain his $41,000 in cash. On March 10, 1959 he signed the contract which Guisinger had prepared for the exchange of the properties between Hughes and Bryson. At the same time he signed the letter agreeing to pay Guisinger $2,050 as his commission for selling the property. However, as we have stated,

this letter was never attached to the document which Hughes signed.

Hughes testified that he was unaware of the unwillingness of Bryson to exchange properties and unaware of the quick sale of his own property through the Honey Grove agent. He was unaware also that Bryson had signed the letter agreeing to pay the full commission of $2,050.

In due time the deal for the exchange of the properties between Hughes and Bryson was closed in the office of the Southwest Title Company. Bryson and Hughes did not both appear at the same time for the closing. They appeared separately and at different times. Bryson, in the closing handled by the Title Company, received his cash consideration of $41,000 less the expense of closing, including Guisinger's commission. Guisinger, through the Title Company, received his full commission of $2,050 from Bryson. The statement prepared by the Title Company so shows.

According to Hughes when he later appeared for his part of the closing he was informed by Guisinger that Bryson had paid only $450 on the total commission of $2,050. Guisinger therefore demanded that Hughes pay the difference of $1600. Hughes made out two checks of $800 each payable to Guisinger and asked Guisinger to hold them until he, Hughes, told him they were good. Hughes says he did not have the money in the bank at the time and so informed Guisinger.

Hughes left the two checks with the Title Company to give to Guisinger. However no mention of them or of any commission due by Hughes was included in the closing statement by the Title Company.

Hughes' testimony in regard to this phase of the transaction is corroborated in part by Mrs. Emily Butler, who was employed as a secretary by Southwest Title company. Mrs. Butler testified that her desk was situated just outside the room where Guisinger and Hughes were discussing the closing. She heard Guisinger tell Hughes that Bryson had only paid the sum of $450, so Hughes would have to make good on his agreement to pay the difference of $1600.

Thereafter events took a somewhat unusual course. Guisinger deposited the two $800 checks he had received from Hughes. Both checks were refused payment on account of insufficient funds. On May 22, 1959 Guisinger wrote a letter to Hughes demanding that the checks be made good. This letter is especially interesting because in it Guisinger does not claim that the two checks totaling $1600 were in payment of a real estate commission. He refers to the checks as " * * * representing cash advanced by me on your behalf in connection with the recent sale of your property * * *." He also says "These checks were cashed in good faith, not intended as a loan." There is no showing in the record that Guisinger ever advanced any money for Hughes, or that he cashed the two checks.

On June 2, 1959 Guisinger wrote another letter threatening legal action against Hughes. To this letter Hughes replied on June 3, 1959 denying that Guisinger had ever advanced any money to him. He also recounted at some length the circumstances under which he had given Guisinger the two checks. He did not deny that he owed the money.

In his brief appellant calls attention to this statement by Hughes in his letter of June 3, 1959: " * * * you told me * * * that you would have to charge me the regular 5% commission on my property as well as charge Mr. Bryson for selling his. I thought it strange but as you were going to a lot of trouble to make the deal, securing the loan for me, I agreed." In explanation of the above statement Hughes testified at the trial that when he wrote the letter he still believed that Bryson had paid 5% on $9,000 which amounted to $450. Therefore he thought he owed the balance of the commission of 5% on $41,000, which balance amounted to $1600. He did

not know that Bryson had paid the full commission of $2,050.

Guisinger filed a complaint with the District Attorney because of the unpaid checks. Hughes then started an investigation. He testified that he went to the Southwest Title Company where he learned for the first time that Bryson had paid the full commission of $2,050 to Guisinger, not merely the $450 as Guisinger had represented. He accordingly stopped payment on the checks.

Hughes and Bryson did not know each other. They did not meet each other and were never in each other's presence until long after their real estate deal had been concluded. When Hughes contacted Bryson after the complaint was filed with the District Attorney, Bryson confirmed the Title Company's information that he had paid the full commission to Guisinger.

When Hughes filed his answer to Guisinger's .motion for summary judgment he attached an affidavit by Bryson. We quote part of Bryson's affidavit:

"* * * I was informed by Guisinger Realty Company that the entire commission due in the transaction which is represented by the attached contract was to be $2,050. I paid Guisinger Realty Company a commission of $2,050 in the transaction, and this was supposed to be the entire commission involved, and Dudley M. Hughes was not to pay any commission in this transaction."

The above affidavit was not introduced in evidence before the jury at the trial on the merits. However one of appellant's points on appeal asserts error of the court in overruling his motion for summary judgment. So Bryson's affidavit as part of the record is before us in that connection. Bryson did not appear at the trial.

Guisinger, testifying in his own behalf, denied Hughes' testimony relating to fraud and conditional delivery of the written contract.

## OPINION

Appellant presents three points on appeal. He contends that the trial court erred (1) in overruling his motions for summary judgment, for instructed verdict and for judgment non obstante veredicto because there were no genuine fact issues to be submitted to the jury; (2) in admitting the testimony of appellee attempting to change the terms of a written contract which was unambiguous and freely entered into by the parties, and (3) in submitting Special Issues Nos. 1, 2 and 3, and in failing to disregard the findings thereon for the reason that there was no evidence of probative effect to support the submission of the issues or the jury's findings.

█ We do not agree with appellant. If the material evidence introduced in behalf of Hughes was admissible, and we hold that it was, fact issues were created in regard to questions of fraud in inducing the execution of the contract and conditional delivery of the instrument signed by Hughes. Consequently it was not error for the court to overrule Guisinger's motions for summary judgment, directed verdict and judgment non obstante veredicto; and it was not error to submit the three special issues to the jury. Appellant's first and third points on appeal are overruled.

█ We see no merit in appellant's second point. It is of course well settled as a general rule that extrinsic evidence will not be received if its effect is to vary, add to, or contradict the terms of a valid written instrument which is unambiguous and is complete on its face. See 23 Tex.Jur.2d 500 and cases there cited. But it is equally well established that the rule is not applicable when fraud is practiced in inducing a person to enter into the agreement. Then extrinsic evidence is admitted, not to vary the terms of the writing, but to show that the writing itself from its inception never became legally effective. Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873; Culligan v. Wootton, Tex.Civ.App., 254

S.W.2d 155, 157; Anderson v. Wise, Tex. Civ.App., 345 S.W.2d 803, 805; 23 Tex. Jur.2d 538.

In the case now before us the second of the above rules must control our decision. The jury found in effect that Hughes was induced to sign the writings in question because of Guisinger's representation that Bryson had agreed to pay a five percent commission on only the $9,000 in the cash he was to receive in connection with the exchange of the properties. The jury found this representation was relied on by Hughes and that it was false. The evidence is to the effect that at the time Guisinger made the representation, he had a written listing agreement to act as Bryson's agent and that Bryson would pay five percent of $41,000 as commission to Guisinger for the sale of Bryson's property. Moreover Bryson had refused to enter into the exchange agreement unless he could be assured of receiving the $41,000 in cash. According to Hughes and the witness Emily Butler, Guisinger persisted in his misrepresentation even up to the time of closing the transaction by telling Hughes that Bryson had paid only $450. Under the circumstances the parol evidence is admissible.

We have pointed out that at the time Hughes signed the letter and printed form on March 4, 1959 Bryson had not signed. The writing at that time amounted to no more than an offer to contract. Hughes delivered the instrument to Guisinger conditionally. Hughes had been informed that Bryson would pay only $450 on the full commission of $2,050. He was led to believe that Bryson would not sign unless he could be assured that Hughes would pay the $1600 difference. Bryson would then sign a letter agreeing to pay $450, which letter was supposed to be attached to the contract and become a part of the contract. Hughes had signed and delivered his letter and the printed form to Guisinger on that condition. The condition was not complied with. On March 10, 1959 Bryson actually signed a letter, but in it he agreed to pay $2,050, not merely $450. His letter was never attached to the main contract.

It is generally held that a conditional delivery of a writing may be shown by parol testimony if the conditional delivery establishes a condition precedent rather than a condition subsequent. McCormick & Ray "Texas Law of Evidence" Vol. 2, § 1661. This view is based on the principle that if the effectiveness of an act is dependent upon the happening of some future event, the act is not consummated until the happening of the event. Wigmore on Evidence, Vol. IX, § 2410 and 2435 (Third Edition). Our Supreme Court has held that the conditional delivery rule is applicable in Texas and "[t]he oral agreement is operative if there is nothing in the writing inconsistent therewith." Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515, 516.

In the case now before us the conditional delivery by Hughes of the writing in question is not inconsistent with terms of the writing itself. For if the condition had been performed by Guisinger, that is, if he had obtained a letter from Bryson agreeing to pay only $450 of the real estate commission and said letter had been attached to the written contract, as Guisinger had represented it would be, Hughes' conditional delivery would have been complied with and would have been entirely consistent with his agreement to pay $1600 of the total commission.

We call attention also that an agent owes a high degree of loyalty to his principal, including a duty of full disclosure of material facts. This is especially true in a case of dual agency—when an agent with the consent of the parties is representing both of them. We quote from Morgan v. Hardy, 16 Neb. 427, 20 N.W. 337, 342:

> "When a professional land agent acts as agent for both the seller and the buyer, and that is known to them, the law exacts the most perfect good faith, honesty, and fairness on his part, and

will not adjudge the specific performance of a contract thus made, unless it has been entered into with perfect fairness, and without misapprehension or misrepresentation; * * *."

See also 3 C.J.S. Agency § 141, p. 17. The rule is applicable in this case.

Appellant's second point is overruled.

The judgment of the trial court is affirmed.

YOUNG, Associate Justice, not sitting.