

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00222-CV
_____

SANJAY JOSHI, APPELLANT/CROSS-APPELLEE

V.

SOUTHLAKE AUTOMOTIVE, LLC, APPELLEE/CROSS-APPELLANT

On Appeal from the County Court at Law No. 1
Tarrant County, Texas[1]
Trial Court No. 2016-006369-1, Honorable Don Pierson, Presiding

October 14, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

In this appeal from a bench trial, both appellant, Sanjay Joshi, and cross-appellant, Southlake Automotive, LLC, claim the trial court erred in entering a take-nothing judgment. Joshi appeals the denial of his claims for breach of contract, DTPA violations, and attorney's fees, while Southlake appeals the denial of its claims for unjust enrichment, breach of contract, and fraudulent inducement. We affirm in part and reverse in part.

---

[1] Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

Background

This case arises out of a transaction involving Southlake's sale of a Ferrari 458 Spider to Joshi. The parties dispute certain details of the transaction, but the evidence shows that around October 7, 2015, Joshi contacted Southlake regarding the purchase of a car for his teenage son. Joshi spoke with Corey Calahan, a salesman for Southlake, and Brandon Koke, the sales manager. Joshi wanted a red Ferrari 458 with a tan interior and low mileage. The Southlake representatives testified that Joshi needed to get the car soon because he wanted it in time for his son's high school homecoming parade, but Joshi disputed this at trial. Joshi and Calahan also discussed a potential trade-in of other vehicles Joshi owned.

According to Joshi, he specifically told Calahan that the car needed a built-in navigation system. However, both Calahan and Koke testified that Joshi did not indicate that navigation was a necessity when they became involved in the search for a car that met Joshi's requirements.

On October 12, Koke contacted Joshi about a 2014 model with 2600 miles on it. In several email exchanges between himself and Koke, Joshi set forth additional features he wanted in the car, such as parking sensors, the Ferrari symbol embroidered on the seats, carbon fiber across the dash, and twenty-inch diamond cut wheels. He did not mention navigation.

Southlake purchased the 2014 car and brought it to Texas from Florida. Southlake took possession of the car on October 17.

Koke testified that, at some point, he called "the experts at Ferrari," who told him that in 2014 and newer vehicles, navigation systems were standard. Based on this representation, Southlake informed Joshi that navigation was standard.

On October 20, Joshi inspected the car in a metal warehouse. At that time, Joshi had not signed any documents. Calahan testified, "Mr. Joshi showed up. We looked around the car. He asked me to start it up and kind of go over some of the features, and then he asked me to show the navigation. I did[;] it said unavailable." According to Joshi, Calahan told him not to worry, because they had already confirmed that the car had navigation. However, Calahan offered to take the car out of the warehouse to test the navigation system. Joshi declined to do so. Koke testified that Joshi was in a hurry to get the vehicle for the homecoming parade. Calahan testified that he knew that Joshi wanted navigation, but Joshi never told him that lack of navigation would be a dealbreaker.

After his inspection, Joshi signed a contract to purchase the Ferrari for $268,000. The contract included a disclaimer of warranties and an integration clause stating that it contained the entire agreement between the parties related to the sale of the vehicle. Southlake gave Joshi a trade-in allowance of $166,000 toward the sales price for his trade-ins of two other vehicles, a Maserati Ghibli and a Lamborghini Gallardo. As a result of the trade-ins, the taxable sale price of the car was reduced from $268,000 to $102,000. Joshi's first monthly payment was due on December 1.

Southlake delivered the car to Joshi's home pursuant to a temporary spot delivery agreement the next morning, October 21, and it was used in Joshi's son's homecoming

parade later that same day.[2]  The following day, Southlake picked up the vehicle to complete the usual process done on pre-owned vehicles, such as the state inspection, detailing, and, in this case, a complimentary maintenance and inspection procedure by Ferrari.  In addition, Joshi requested clear wrap paint protection film for the car, which Southlake was to provide for $1,250.

On November 5, while the car was still at the Ferrari dealership for maintenance, Southlake learned that it did not have navigation.  Calahan informed Joshi that same day. Joshi was upset when he learned that there was no navigation.  Koke testified that he then offered Joshi two solutions:  Southlake could install an aftermarket navigation system or it could unwind the deal.  By "unwinding the deal," Koke meant Southlake would take the Ferrari back, return Joshi's trade-in vehicles or their dollar value to him, void all the paperwork, and the parties could go their separate ways.  At that time, no finance charges had been incurred.  However, Joshi testified at trial that "nobody does unwinding" and that Southlake did not make such an offer.

Joshi rejected the offer to provide an aftermarket navigation system, but accepted delivery of the Ferrari on November 6.  Koke agreed to attempt to find another buyer for the car and to continue to search for a 458 Spider with the same features plus a navigation system.  Joshi testified that he accepted delivery of the car because he had already paid for it.  He said, "I was paying the insurance and interest charges and everything." However, he was unable to identify any payments he had made and did not know whether the check he tendered to Southlake had been cashed.

---

[2] The spot delivery agreement permitted Joshi to take delivery of the vehicle even though financing for the purchase of the vehicle was not yet finalized.

On December 9, Southlake bought the car back from Joshi for $268,000, the same amount he had paid for it. Southlake sold the car to another buyer on December 15 for $270,000. Later in December, Joshi received an invoice from Southlake for $1,250 for the clear wrap protection he had ordered. At trial, he acknowledged that he did not pay the invoice. In February, Joshi purchased a different car, a Lamborghini, from another dealership. Calahan testified that Southlake could have applied the tax savings from Joshi's trade-ins to the purchase of the Lamborghini and offered to do so, but Joshi declined.

Joshi sued Southlake for violating the Texas Deceptive Trade Practices Act ("DTPA"). *See* TEX. BUS. & COM. CODE ANN. § 17.46(b) (West Supp. 2020). He alleged that Southlake violated section 17.46(b) of the DTPA by (1) representing that the goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (2) representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve; (3) representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced; and (4) failing to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. *See id.* He further alleged that Southlake breached the implied warranty of fitness for a particular purpose and an express warranty that the vehicle he purchased "came equipped with the very features that Plaintiff advised Defendant were material to Plaintiff's decision to purchase the subject vehicle." In addition to his DTPA claims, Joshi asserted claims for breach of contract, fraudulent inducement, common law fraud, and negligent misrepresentation.

5

Joshi alleged that he was damaged in the amount of $16,750, representing $6,375 in taxes paid on the replacement vehicle he purchased from another dealership and $10,375 in tax savings he lost in that second transaction as a result of having traded in two vehicles to Southlake.

In its counterclaim, Southlake brought claims for unjust enrichment, fraudulent inducement, and breach of contract. Southlake asserted that Joshi was unjustly enriched by his use of the Ferrari for thirty-three days. The Ferrari had a rental value of $1,500 per day, bringing Southlake's claim to $49,500. Southlake also sought $1,250 in breach of contract damages for the outstanding invoice for the clear wrap that Joshi requested for the car.

The case was tried to the bench. The trial court determined that neither Joshi nor Southlake met their burden of proof for affirmative relief, and entered a take-nothing judgment from which both parties appealed. On appeal, Joshi argues that the trial court erred by ordering that he take nothing from Southlake with respect to his DTPA claims, breach of contract claim, and claim for attorney's fees. Southlake argues that the trial court erred by issuing a take-nothing judgment on its unjust enrichment claim, breach of contract claim, and fraud in the inducement claim.

### Standard of Review

When neither findings of fact nor conclusions of law have been filed or requested, the judgment of the trial court after a bench trial implies all necessary findings of fact to support itself. *Schoeffler v. Denton*, 813 S.W.2d 742, 744 (Tex. App.—Houston [14th Dist.] 1991, no writ). A trial court's implied findings of fact in a bench trial have the same force and dignity as a jury's verdict upon a jury question. *Anderson v. City of Seven*

6

*Points*, 806 S.W.2d 791, 794 (Tex. 1991). Therefore, the trial court's implied findings are similarly reviewed for legal and factual sufficiency of the evidence. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005) (legal sufficiency of evidence is to be reviewed in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not); *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam) (fact findings may be overturned only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust). We will affirm the trial court's judgment if it can be upheld on any legal theory supported by evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). The trial court, as factfinder, was entitled to believe or disbelieve all or any part of the witnesses' testimony. *Dwairy v. Lopez*, 243 S.W.3d 710, 713 (Tex. App.—San Antonio 2007, no pet.).

Analysis of Joshi's Claims

DTPA Claims

In his first issue, Joshi claims that the trial court erred in entering a take-nothing judgment on his DTPA claims, because he proved all the elements. The elements of a DTPA claim are (1) the plaintiff was a consumer, (2) the defendant either engaged in false, misleading, or deceptive acts or engaged in an unconscionable action or course of action, and (3) the DTPA violation or unconscionable action was a producing cause of the plaintiff's injury. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). Joshi alleged both a "laundry list" violation under section 17.46 of the Texas Civil Practice and Remedies Code and a claim for breach of an express or implied warranty. As to the first,

7

Joshi alleges that Southlake made repeated misrepresentations to him about the car's navigation system, namely that the car had one, that it was a standard feature of the car, and that it would work after service on the car. As to the second, Joshi asserts that Southlake, in order to induce him to purchase the car, made an express warranty that the navigation system on the car would work after the car was serviced. He concludes that Southlake breached this warranty because after service was performed, the car still had no functioning navigation system.

Southlake raised several defenses and affirmative defenses to Joshi's DTPA claims. Our analysis will focus only on whether Joshi established that any DTPA violation was a producing cause of any damages to him.

The basis for both of Joshi's claims is that Southlake's employees misrepresented to him the existence of a functioning navigation system in the Ferrari. This misrepresentation was corrected by Southlake prior to Joshi's acceptance of the car on November 6. There was evidence at trial that Joshi, upon being informed that the car had no navigation system, had the option to refuse delivery of the car, cancel the transaction, and avoid any damages.

A plaintiff in a DTPA suit is required to mitigate damages. *Pinson v. Red Arrow Freight Lines, Inc.*, 801 S.W.2d 14, 15 (Tex. App.—Austin 1990, no writ). When an injured party fails to comply with the duty to mitigate damages, recovery is not permitted as to that part of damages that could have been avoided or was incurred as a result of the failure to mitigate. *Id.* Here, Southlake presented evidence, which the trial court could have accepted as true, that Joshi could have avoided any damages he allegedly incurred by accepting Southlake's offer to unwind the transaction. Thus, we conclude that the

evidence supports the trial court's determination that Joshi did not establish entitlement to relief on his DTPA claims.  We overrule Joshi's first issue.

Breach of Contract

In his second issue, Joshi claims that the trial court erred in entering a take-nothing judgment on his breach of contract claim, because he proved all the elements.  The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of contract by the defendant, and (4) damages to the plaintiff resulting from that breach.  *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied).

Joshi alleges that he "entered into a contract with Southlake to purchase the [c]ar, one part of which was that the [c]ar would have a functioning built-in navigation system." Southlake responds that, while the parties had a valid contract for the sale of the car, the contract did not include any requirement that the car have a navigation system.  We thus begin our analysis by examining the parties' agreement and determining whether Southlake promised to provide a car with a navigation system.

The promise of a built-in navigation system is not expressed in the text of the parties' written contract.  The contract includes a section listing the car's options, accessories, and services, but no mention of navigation is made therein.  Joshi does not dispute this, but relies on extrinsic evidence, specifically, his testimony, to establish the existence of an agreement for Southlake to provide a car with a navigation system.

Southlake and Joshi entered a written contract representing the final and complete expression of all the terms agreed upon by the parties.  The written contract expressly provides that the contract "contains the entire agreement between you and us relating to

9

the sale and financing of the vehicle." "When parties have entered into a valid, written, integrated contract, the parol evidence rule precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract." *West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019). In such cases, extrinsic evidence is not admissible to add to, vary, or contradict the terms of a written contract that is clear on its face. *Guisinger v. Hughes*, 363 S.W.2d 861, 865 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.). The term alleged by Joshi was an addition to the terms of the parties' written contract and thus unenforceable under the parol evidence rule.

We therefore conclude that the evidence supports the trial court's decision that Joshi did not establish entitlement to relief on his breach of contract claim. We overrule Joshi's second issue.

Attorney's Fees

In his third issue, Joshi contends that the trial court erred by denying his claim for attorney's fees. Because Joshi was not a prevailing party on his DTPA claim, the trial court did not err in denying his claim for attorney's fees under the DTPA. *See* TEX. BUS. & COM. CODE ANN. § 17.50(d) (West 2011) (providing for award of court costs and reasonable and necessary attorneys' fees for consumers who prevail on claims). Similarly, the trial court did not err in denying Joshi's claim for attorneys' fees under section 38.001 of the Civil Practice and Remedies Code because Joshi failed to successfully prosecute his claim. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (entitlement to fees under section 38.001(8) requires that party prevail on a

cause of action for which attorney's fees are recoverable and recover damages). We therefore overrule Joshi's third issue.

Analysis of Southlake's Claims

Unjust Enrichment

In Southlake's first issue, it argues that the trial court erred in issuing a take-nothing judgment on its unjust enrichment claim. Southlake contends that Joshi wrongfully obtained a benefit, namely the use of the Ferrari, for his son's homecoming parade and for the thirty-three-day period after he learned of the lack of navigation. The evidence showed that the car had a fair market rental value of $1,500 per day.

Unjust enrichment is an equitable theory of recovery available when a party has obtained a benefit from another by fraud, duress, or the taking of unfair advantage, and the receipt of those benefits is not governed by contract. *Mason v. Mason*, No. 07-12-00007-CV, 2014 Tex. App. LEXIS 413, at *13-14 (Tex. App.—Amarillo Jan. 13, 2014, no pet.) (mem. op.) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); and *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App.—Texarkana 1988, writ denied)). Here, Southlake and Joshi entered into an express contract that governed the sale and financing of the vehicle. Because the transaction was governed by a contract, we agree with the trial court that Southlake is not entitled to recovery under the theory of unjust enrichment. We overrule Southlake's first issue.

Breach of Contract

In its second issue, Southlake claims that it established it was damaged in the amount of $2,200 for Joshi's breaches of contract. First, Southlake contends that it was

11

undisputed that Joshi requested the addition of clear wrap paint protection for the car at a cost of $1,250 and that, although Southlake provided the clear wrap, Joshi did not pay for it. Second, according to Southlake, it established that it incurred a sales fee of $875 and a $75 cost for "accounts receivable" as a result of selling the car.

Again, the elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of contract by the defendant, and (4) damages to the plaintiff resulting from that breach. *Domingo*, 257 S.W.3d at 39. Koke testified that Joshi ordered the $1,250 clear wrap for the car after he inspected it in October and that Southlake provided it. Calahan testified that the invoice for the service was emailed to Joshi by the dealership's accounting office. Joshi admitted that he did not pay for the clear wrap. He testified that he "was suppose[d] to pay for the clear wrap" but that he received the invoice for it after the car had been sold to someone else. The evidence at trial established that the parties had an oral agreement that the clear wrap would be provided and that Southlake provided it at a cost of $1,250. This evidence is all that is needed for Southlake to prove its claim of breach of contract regarding the clear wrap.

We conclude that Southlake conclusively proved each essential element of its breach of contract claim as to the parties' agreement regarding clear wrap. Accordingly, we reverse the trial court's judgment as to this portion of Southlake's breach of contract claim and render judgment for Southlake in the amount of $1,250.

We next consider the evidence of Southlake's other breach of contract claim, with alleged damages of $950. Southlake argues that it established that the parties' written contract included a clause allowing Southlake "to enforce reasonable out of pocket

12

expenses related to holding or selling the vehicle." The provision relied upon by Southlake addresses the event of Joshi's default under the written contract and provides:

> DISPOSITION OF THE VEHICLE. If you don't pay us to get the vehicle back, we can sell it or take other action allowed by law. We will send you notice at least 10 days before we sell it. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.

At trial, Southlake elicited testimony from Koke that, after Southlake bought the car back from Joshi for $268,000, Southlake resold the car to another buyer, just days later, for $270,000. Southlake paid a $875 sale fee and "account receivables $75" in connection with this second sale of the car.

We observe that these figures indicate that the resale of the car was made without financial loss to Southlake. As such, the evidence strongly tends to show that no damages were caused by the sale. Even if we were to assume that Joshi breached the parties' written contract, and further assumed that the contractual provision relied upon by Southlake applied, the evidence supports a determination that Southlake failed to establish that it was damaged by any such breach. Therefore, we conclude that the trial court did not err by denying this portion of Southlake's breach of contract claim.[3]

---

[3] In connection with its breach of contract argument, Southlake requests "a remand to the trial court in the amount of its attorneys' fees." The general rule is that attorneys' fees are to be requested and proved in the initial trial. *See Varner v. Cardenas*, 218 S.W.3d 68, 69-70 (Tex. 2007). Here, the record contains no evidence of the attorneys' fees incurred by Southlake and Southlake has not explained in its brief why it is entitled to a remand on the issue. Therefore, Southlake's request for a remand is denied.

Fraud in the Inducement

In its final issue, Southlake argues that the trial court erred in issuing a take-nothing judgment on Southlake's fraud in the inducement claim. The elements of fraud in the inducement are: (1) the defendant made a material misrepresentation that was false, (2) the defendant knew the representation was false when made or made it recklessly as a positive assertion without any knowledge of its truth, (3) the defendant intended to induce the plaintiff to act upon the representation, and (4) the plaintiff actually and justifiably relied upon the representation and thereby suffered injury. *Taft v. Sherman*, 301 S.W.3d 452, 457 (Tex. App.—Amarillo 2009, no pet.).

The entirety of Southlake's argument on the elements of this claim reads as follows: "Southlake established that Sanjay Joshi represented on November 5, 2015, that he would accept the Ferrari with <u>actual knowledge</u> that the Ferrari did not have a navigation system. Joshi made the representation to induce Southlake to deliver the Ferrari to him for his personal use for over a month knowing he would later want to resell it and/or sue Southlake for it." Southlake provides no references to the record in support of these assertions, nor does it offer evidence of damages; it simply "requests a finding in its favor [on] its fraud in the inducement claim in the amount of $2,200."

Failure to adequately brief an issue results in a waiver of that issue on appeal. *See* TEX. R. APP. P. 38.1(i) (obligating appellant to proffer argument with appropriate citations to authorities and to the record); *Sunnyside Feedyard, L.C. v. Metropolitan Life Ins. Co.*, 106 S.W.3d 169, 173 (Tex. App.—Amarillo 2003, no pet.) (holding that the failure to proffer explanation and citation waives the complaint). We conclude that Southlake's

failure to provide citations to the evidence or to legal authority in support of its claim has effected a waiver of this issue.  Southlake's third issue is therefore overruled.

## Conclusion

We reverse the trial court's judgment to the extent that it denies the clear wrap portion of Southlake's breach of contract claim, and we render judgment in Southlake's favor on such claim in the amount of $1,250.  In all other respects, we affirm the judgment of the trial court.

Judy C. Parker
Justice